## CHARLESTON.

### WARD *v.* WARD.

Submitted February 1, 1900—Decided April 7, 1900.

1. TRIAL—*Instructions—Facts Stated.*
    When the court instructs the jury that if they believe, from the evidence, certain hypothetical facts mentioned in the instruction, they must find for the party plaintiff or defendant, as the case may be, but omits from such statement of facts a material fact, which being believed from the evidence, would require a different verdict, such instruction is erroneous, and, if excepted to, and not cured, is ground for reversal. (p. 768).

2. INSTRUCTION ERRONEOUS—*Presumption Prejudcial.*
    An erroneous instruction on a material point is presumed to be to the prejudice of the party appealing against whom it is given, and will cause reversal, unless it clearly appears from the record that it was harmless. (p. 771).

3. INCONSISTENT INSTRUCTIONS—*Not Cured by Good One*
    Instructions must not be inconsistent with each other. A bad instruction is not cured by a good one, though they be given on the motion of adverse litigants. (p. 772).

4. SLANDER—*Utterance Privileged—Burden.*
    The question as to whether the occasion on which the words were uttered in an action for slander was one of absolute or qualified privilege, is one for the court. If absolute, the defendant is entitled to judgment; if, however, the privilege was only qualified, the onus lies on the plaintiff of proving actual malice. (p. 772).

5.  Qualified Privilege— *Communication—Interest.*
    A qualified privilege extends to all communications made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation.  (p. 772).

6.  Defamation— *Parties Interested.*
    In such a case the defendant may, under the general issue, show that the alleged defamation consisted in a communication made by or to persons interested in the subject-matter of the communications, although they affect the character or credit of the plaintiff.  (p. 772).

Error to Circuit Court, Barbour County.

Action by Ira Ward against Taylor Ward.  Judgment for plaintiff, and defendant brings error.

*Reversed.*

W. T. Ice and Samuel V. Woods, for plaintiff in error.

Dayton & Dayton, M. Peck and F. O. Blue, for defendant in error.

English, Judge:

This was an action of trespass on the case, brought by Ira Ward against Taylor Ward, his brother, in the circuit court of Barbour County, on the 26th of December, 1896, claiming damages to the amount of twenty-five thousand dollars on account of certain defamatory words alleged to have been uttered by the defendant in regard to the plaintiff's pecuniary condition.  The words alleged to have been uttered by the defendant, as set forth in plaintiff's declaration, are as follows: "That he (meaning plaintiff) was broke up (meaning that the plaintiff had become so involved financially as not to be able to continue as theretofore his business, and that he had become insolvent, and unable to pay his debts); that he (meaning plaintiff) was broke up, and could not pay his debts (meaning that plaintiff had become insolvent); that he (meaning plaintiff) was broken up worse than Joe Smith, and could never pay his debts (meaning that plaintiff had failed in business, become more insolvent than Joe Smith, and would never, by

reason of their magnitude, be able to pay his debts); that he (meaning plaintiff) was broke up (meaning that he had failed in business, and become insolvent), and he (meaning himself,—defendant) intended to put him (meaning plaintiff) in the road (thereby meaning that the defendant intended selling out by legal process the property, real and personal, of plaintiff, and, by depriving him of his home and property, require him to leave the same in abject poverty); that if he (meaning plaintiff) had known that the Bank of Buckhannon was going to get out that attachment (meaning a certain execution issued from the circuit court of Upshur County against Joseph Smith, Jane Smith, and plaintiff, as surety, for nine hundred and sixty-six dollars and sixty-eight cents, with interest from February 12, 1894, and fourteen dollars and one cent costs,) he (meaning plaintiff) would have put all his (meaning plaintiff's) property out of his (meaning plaintiff's) hands (thereby meaning and intending that, if plaintiff had known beforehand that said execution would issue, that he, plaintiff, would have fraudulently and corruptly disposed of his property for the purpose of cheating and defrauding said bank and his other creditors out of payment of their debts against him)." On the 4th of March, 1898, the defendant appeared, and pleaded not guilty, and issue was thereon joined. On June 3, 1898, the cause was submitted to a jury, and later resulted in a verdict for the plaintiff for seven thousand five hundred dollars damages. The defendant, by his counsel, moved the court to set aside the verdict, and grant a new trial, which motion was overruled, and judgment rendered upon the verdict. The defendant excepted, and took a bill of exceptions.

During the trial, the court at the instance of the plaintiff, gave the jury the following instructions: "No. 1. The court instructs the jury that slander is the defamation of a man with respect to his character, or his trade, profession, or occupation, and in this case has reference only to his trade and business, by word of mouth; and if they believe, from the evidence, that the defendant, Taylor Ward, uttered any or all of the slanderous words charged in the plaintiff's declaration, maliciously intending to damage the plaintiff, Ira Ward, in his trade, profession, or occupation,

and that said Ira Ward was damaged by said slanderous utterances from Taylor Ward, they should find for the plaintiff. No. 2. The court instructs the jury that if they believe, from the evidence, that the slanderous words, or any of them, charged in the plaintiff's declaration, were uttered by the defendant, Taylor Ward, against and about the plaintiff, Ira Ward, the law will presume that the said words were uttered maliciously, and with intent to injure the plaintiff, and the burden is on the defendant to show that the words were privileged; and if the jury further believe, from the evidence, that the defendant has failed to show that said words were privileged, then they should find for the plaintiff." "No. 6. The court instructs the jury that if they believe, from the evidence, that the defendant, Taylor Ward, spoke and published the slanderous words or any of them charged in the plaintiff's declaration mentioned in the manner and for the purpose charged therein against him, and that said slanderous words so spoken damaged the plaintiff in his trade or occupation, then they should find for the plaintiff; and the court further instructs the jury that they are the judges of the amount of damages to which the plaintiff would be entitled under the evidence." "No. 10. The court instructs the jury that if they believe, from the evidence, that the defendant, Taylor Ward, uttered the slanderous words, or any of them, as laid in the plaintiff's declaration, or any of them in response to private inquiries made of him concerning the plaintiff, such replies or answers made to such inquiries do not excuse the defendant from liability to the plaintiff, unless the jury believe, from the evidence, that the defendant, Taylor Ward, honestly believed in the truth of the said charges made by him at the time he made them, and unless the jury further believe from the evidence that his said charges were in direct response to the said injuries, and were not irrelevant information gratuitously volunteered on the part of the said Taylor Ward." All of these instructions were objected to by the defendant, the objection overruled, and the instructions given to the jury, the defendant excepting thereto.

Can we sustain the action of the court in giving to the jury said instruction No. 1? In it the court omits any ref-

erence to the question whether the utterances attributed to the defendant in the averments of the declaration were or were not privileged. A glance at the evidence shows that almost every witness who testifies to the fact that the plaintiff was broken up, or would be unable to meet his liabilities, was a creditor of the plaintiff, and was in a confidential manner consulting with the defendant, also a large creditor, in reference to the solvency of his brother, the plaintiff. Under the head of "Libel and Slander," 13 Am. & Eng. Enc. Law, p. 429, we find the law thus stated: "Although evidence tending to prove the truth of the words spoken is inadmissible under the plea of not guilty, yet facts which induced the mistaken belief in the mind of the defendant that the charge was well grounded are admissible to rebut malice. The judge must decide whether the occasion is or is not privileged, and also whether such privilege is absolute or qualified. If he decide that the occasion was one of absolute privilege, the defendant is entitled to a judgment, however maliciously and treacherously he may have acted. If, however, the privilege was only qualified, the *onus* lies on the plaintiff of proving actual malice." Turning to the testimony of Crim, it appears that this witness for the plaintiff was president of the Tygarts Valley Bank; that the defendant was security for the plaintiff on a note at the Grafton Bank, and came into Crim's office at the bank several times to see if the note had been paid, and they consulted together as to plaintiff's liabilities, and ascertained them to be twenty-eight thousand dollars to thirty thousand dollars, and that is the way the conversation occurred. The bank was interested in knowing the plaintiff's pecuniary condition, and the defendant was a creditor, and this was surely a privileged communication. Newell, in his work on Slander (page 389), in speaking of qualified privilege, says: "It extends to all communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is a moral or social character of imperfect obligation;" citing many authorities. Other parties, relatives

of the defendant, who had business relations with the plaintiff, and to whom he was indebted, held confidential communications with the defendant as to the solvency of plaintiff, and, if such communications are not to be legally and properly classed as privileged, a signal check will be given to those confidential business relations in every day's transaction which tend so largely to promote the prosperity of the State. The first and sixth instructions, above quoted, single out certain facts which the evidence may have a tendency to prove, and omit the facts so prominently shown that the words uttered, from the circumstances immediately attending their utterance, might well be considered and believed by the court and jury to be privileged communications. In the case of *Woodell* v. *Improvement Co.*, 38 W. Va. 23, (17 S. E. 386), this Court held that "when the court instructs the jury that if they believe, from the evidence, certain hypothetical facts mentioned in the instructions, they must find for the party plaintiff or defendant, as the case may be, but omits from such statement of facts a material fact, which, being believed from the evidence, would require a different verdict, such instruction is erroneous, and, if excepted to and not cured, is ground for reversal." And in *Osborne* v. *Francis*, 38 W. Va. 312, (18 S. E. 591), it was held that "an erroneous instruction on a material point is presumed to be to the prejudice of the party appealing against whom it is given, and will cause reversal unless it clearly appears from the record that it was harmless." In the case under consideration, the fact that the words claimed to have been slanderous were privileged communications was strongly relied on by the defendant. In *McCreery's Adm'x* v. *Railroad Co.*, 43 W. Va. 110, (27 S. E. 327), it was held that: "When contributory negligence is relied on in defense of an action for wrongful injury or death, a hypothetical instruction directing a finding in favor of plaintiff, which omits any reference to the facts tending to establish contributory negligence, and entirely ignores such defense, is erroneous. Nor can such error be cured by other instructions given in behalf of either party." As to this last proposition, see *McKelvey* v. *Railway Co.*, 35 W. Va. 501, (14 S. E. 261), where it is held that instructions must not be inconsistent

with each other, and that a bad instruction is not cured by a good one, though they be given on the motion of adverse litigants. "The bad instruction, should be with drawn." As to hypothetical instructions, see *Industrial Co.* v. *Shultz*, 43 W. Va. 471, (27 S. E. 255).

Instruction No. 2 is erroneous in that it tells the jury that "if they believe, from the evidence, that the defendant has failed to show that said words were privileged, then they should find for the plaintiff. The error consists in the fact that the question as to whether the words uttered were privileged was not a question for the jury, but was one of law for the court upon the facts proven. See quotation above given from 13 Am. & Eng. Enc. Law, p. 429. The utterance in the case at bar comes within the purview of what the law considers a qualified priviledge. Newell, Defam. p. 389. The *onus* lies on the plaintiff of proving actual malice, and the court erred in telling the jury, in instruction No. 2, that "if they believed, from the evidence, that the slanderous words, or any of them, charged in plaintiff's declaration, were uttered by the defendant against or about the plaintiff, the law will presume that the said words were uttered maliciously, and with intent to injure the plaintiff," without at the same time telling them that said presumption would be overthrown if the circumstances showed that the utterances were privileged, and in such case the *onus* of proving malice would be upon the plaintiff.

Instruction No. 6 is erroneous in that it fails to inform the jury as to the result of the words charged in the declaration to have been uttered were privileged. Whenever, in answering an inquiry, the defendant is acting *bona fide* in the discharge of any legal, moral, or social duty, his answer will be privileged. *Id.* p. 494, § 88. The defendant may, under the general issue, show that the alleged defamation consisted in a communication on matters of business made by or to persons interested in the subject-matter of the communications, although they affect the character or credit of the plaintiff. *Id.* p. 788. Greenleaf on Evidence (volume 2, § 421), under "Defense under the General Issue," says: "So, if a person having information materially affecting the interests of another, hon-

estly communicates it privately to such other party in the full and reasonably grounded belief that it is true, he is justified in so publishing it, though he has no personal interest in the matter, and though no inquiry has been made. of him, and though the danger to the other party is not imminent."

Having reached the conclusion that instructions Nos. 1, 2, and 6, for the above reasons, were erroneous, and should not have been given to the jury, I consider it unnecessary to discuss the testimony, or the questions raised by the action of the court in overruling the motion to set aside the verdict. The judgment is reversed, the verdict set aside, and a new trial awarded.

*Reversed.*