Defendant, Gilmers, Inc., is a corporation engaged in the business of operating a system of retail stores, one of which is located on Main Street in the city of Durham, N.C. Defendant, J. W. Beavers, on 13 May, 1922, was an employee of his codefendant, his duties, among others, being to investigate and report to the manager of the store, the loss of property, or the taking from the store of merchandise, which had not been paid for. He had formerly been a police officer of the city of Durham.
Plaintiff, then about 14 years of age, between 6 and 7 o'clock p.m. on Saturday, 13 May, 1922, was in said store with her mother. While the mother was making purchases in said store, plaintiff was standing near the jewelry counter, manifesting an interest in the articles displayed thereon. This counter was near the door, opening from the store into the street. Defendant, Beavers, was standing a short distance from her, on duty in the store. Plaintiff's attention was directed particularly to the combs or barrettes displayed on the jewelry counter. The clerk in charge said to plaintiff, "Do you want to buy one of these (meaning the barrettes)?" Plaintiff replied, "No, I do not find the kind I want." Plaintiff had broken one of a pair that she owned and wanted a new one to match the unbroken one. At this moment her mother joined her and, together, they started for the door, intending to leave the store. Defendant, Beavers, rushed in between them and the door, and addressing plaintiff, in a loud and rough voice and with a brusque manner, said to her, "How about the one you have got in your hand?" Beavers threw his hand between plaintiff and the door, preventing plaintiff and her mother from going out of the store, as they intended to do. Beavers is a large, portly man, of unusual physical strength and of a commanding presence. Plaintiff was frightened by the words and conduct of Beavers, and begun to cry. She made no reply to his question. Her mother at once took her by the hand, and showing Beavers that she had only a pocket-book in one hand and nothing *Page 9 
in the other, said to him, "She has a pocket-book, she is my daughter; she does not steal." Plaintiff then realizing what Beavers had said to her, said, "You stuffy old fool, you had better look out who you are accusing of stealing in your old store."
Beavers made no reply to plaintiff or her mother, but withdrew his hand, and permitted them to leave the store. After returning home, upon the suggestion of the father of plaintiff, she and her mother returned to the store, and saw Mr. Tilley, the manager. The mother, in the presence of plaintiff, related to Mr. Tilley the occurrence, Mr. Tilley replied, "Yes, I understand he did not accuse your daughter of stealing. Mr. Beavers says he stopped your daughter at the door and offered her a pocket-book." Mr. Beavers was standing near by during this conversation.
Plaintiff was badly frightened and greatly humiliated by the words and conduct of Beavers. Many people were present in the store at the time. They both saw and heard the incident. It was discussed by her schoolmates when she returned to school the next week. Her friends and acquaintances spoke of it, in her presence. She told her parents that she wished to stop school. The incident was referred to in her presence by schoolmates and others from time to time during the remainder of that school term. The repeated references to the occurrence caused her continued humiliation.
Plaintiff, testifying as a witness in her own behalf, was asked the following question:
"What, if anything, do you remember now was said to you about this matter by any of your friends or acquaintances after it occurred?"
She replied: "One boy said, `Roma, if I had known you wanted a comb that bad, I would have bought you one.' A girl said to me, `Roma, honey, did you really steal the comb.' Such remarks were made to me by different class-mates in the high school."
To this question and answer, defendants, in apt time, objected; objection overruled; defendants excepted. This was defendants' first exception.
Plaintiff was asked the further question: "State whether or not, there was any difference in the actions of your friends before and after this occurrence." She replied: "Some of my friends acted cooler to me after this happened than they did before. I had been living in Durham about two years before this time."
To this question and answer defendants, in apt time, objected. Objection overruled. Defendants excepted. This was defendants' second exception.
Abner Pope, witness for plaintiff, testified that during May, 1922, he was running a grocery store in Durham; Mr. Sawyer and his family *Page 10 
lived across the street, opposite his store. He was asked to state whether or not there was any discussion in his store, on Saturday night, 13 May, 1922, in reference to Miss Roma Sawyer. He replied: "Some time on Saturday night, about 7 o'clock, somebody came into the store. I do not recall who it was. He said something about Miss Roma being stopped down at Gilmers and accused of stealing something."
To this question and answer, defendants, in apt time, objected. Objection overruled. Defendants excepted. This was defendants' third exception.
The witness continued: "We were all so very much surprised that I did not know what to think about it. I had known her a long time, and had found her one of the most honest girls I had ever known. There were fifteen or twenty people in my store. I do not know what they said, but everybody seemed to be surprised. I heard them say that it was Mr. Beavers who had accused her of stealing."
Defendants objected to this testimony and moved the court to strike it out. Objection overruled. Defendants excepted. This is defendants' fourth exception.
Defendants denied that Beavers had spoken the words to plaintiff, as alleged, and denied that he had prevented plaintiff and her mother from leaving the store and offered evidence tending to contradict the evidence of plaintiff.
After the charge of the court, the jury returned verdict as follows:
1. Did defendant, Beavers, speak to, of and concerning the plaintiff in the presence and hearing of another or others, the words, as alleged in the complaint? Answer: "Yes."
2. If so, did said language, in view of the attendant circumstances, amount to a charge of larceny, as alleged in the complaint? Answer: "Yes."
3. If defendant, J. W. Beavers, used said language, as alleged in the complaint, was he at the time acting within the scope of his employment, and in the line of his duty? Answer: "Yes."
4. Did defendants wrongfully assault the plaintiff, as alleged in the complaint? Answer: "Yes."
5. What damages, if any, is the plaintiff, Roma Sawyer, entitled to recover of defendants? Answer: "$2,500."
Upon this verdict, judgment was rendered in favor of plaintiff and against defendants. Defendants appealed therefrom. Assignments of error are based upon exceptions taken in apt time to evidence and to instructions given the jury in the charge of the court.
J. W. Beavers, while on duty in the store of his codefendant, his employer, Gilmers, Inc., observed plaintiff standing near the jewelry counter looking at some combs or barrettes displayed thereon for sale. He heard the clerk in charge ask plaintiff if she wished to buy one of the barrettes and heard plaintiff, after examining them, reply that she did not, giving as her reason that she had not found the kind she wanted. Beavers, thereupon, at once, in a brusque manner, approached plaintiff and in a loud and rough voice said to her, in the presence of her mother and a number of people then in the store, "How about the one you have in your hand." Plaintiff, a school girl about 14 years of age, was frightened by the manner and words of Beavers and began to cry. Her mother, by her reply to Beavers, indicated clearly to him that she understood that Beavers had charged plaintiff with larceny. Plaintiff was reassured by her mother's prompt defense. By her spirited remark to Beavers she made it equally clear that she also understood that he had accused her of stealing a comb. Beavers, without a word of apology or explanation, turned and walked away. They then left the store. When they returned later and complained to the manager, Mr. Tilley, of Beavers' manner and words, although he heard the conversation, Beavers was again silent. He had previously reported the incident to the manager, denying however that he had made an accusation of larceny against plaintiff.
These are the facts as found by the jury. There was sufficient evidence to sustain this finding. Under the instructions of the court, the jury found that Beavers, acting within the scope of his authority and in the line of his duty as an employee of his codefendant, used the language as alleged in the complaint and meant thereby to charge and did charge plaintiff with larceny, in the presence of her mother and many other persons then in the store. There was no justification or attempt to justify the charge. The defense was that Beavers did not use the language alleged and as testified by plaintiff and her mother.
In Cotton v. Fisheries Products Co., 177 N.C. 57, this Court held that in an action for slander it is not required that the charge be made in express terms, but the significance of the utterance may be determined by the words themselves, and in view of the attendant circumstances, and in this connection, the tone and gestures and accompanying acts of the parties may at times be properly considered; and if, when so interpreted, the words by fair intendment and to the reasonable apprehension of the listeners, amount to such charge they may be so construed and dealt with. Authorities are cited to sustain this holding. It is also there held that "It is the accepted principle here and elsewhere that corporations may be held liable for both the wilful and negligent torts of their agents and that the principle extends to actions *Page 12 
for slander when the defamatory words are uttered by express authority of the company or within the course and scope of the agent's employment."
As plaintiff and her mother, who had purchased articles of merchandise in the store, were about to leave, defendant, Beavers, in a brusque manner, rushed between them and the door opening into the street and placed himself in the door, with his hand thrown out, preventing them from passing through the door into the street as they intended. He is a large, portly man, of great physical strength and of commanding appearance. Plaintiff is a girl, then about 14 years of age, and was accompanied only by her mother. There were many persons present at the time who saw and heard the incident and who were strangers to plaintiff. She was so frightened by the conduct of Beavers that she began to cry. Both she and her mother were deterred by the violence of Beavers from going out the door. His manner was threatening and plaintiff was put under reasonable apprenhension [apprehension], under all the circumstances, that if she persisted in going through the door as she intended, he would prevent her by force.
These are the facts as found by the jury. There was evidence sufficient to sustain the finding. Under the instructions of the court the jury found that Beavers, acting within the scope of his authority, and in the line of his duty as an employee of his codefendant, Gilmers, Inc., wrongfully assaulted plaintiff. S. v. Williams, 186 N.C. 627; Gallop v. Clark,188 N.C. 186.
Plaintiff seeks to recover of defendants damages for the slander and for the assault which she alleges and which the jury has found, were committed by Beavers, employee of Gilmers, Inc., acting within the scope of his employment. The jury, upon the evidence submitted and under the instructions of the court, has assessed her damages. Defendants move for a new trial, assigning errors, based upon exceptions duly noted, both in the admission of evidence and in the instructions given to the jury in the charge of the court.
Defendants contend that it was error to admit as evidence the testimony of repetitions of the slanderous words alleged to have been uttered by defendant, Beavers, such repetitions being voluntary by third persons and unauthorized by the defendants. This contention is presented by exceptions to questions addressed to and to answers made by plaintiff and witness, Abner Pope. His Honor expressly instructed the jury that this "testimony was not evidence on the question as to whether or not the defendant, Beavers, actually accused plaintiff of stealing, but was to be considered by the jury as evidence only upon the question as to whether or not plaintiff's general reputation had been damaged as a result of such words." *Page 13 
The evidence was competent for the purpose to which his Honor thus limited it and the assignments of error based on these exceptions are not sustained.
It is conceded by attorneys for both plaintiff and defendant that this question has not heretofore been presented to and therefore has not been passed upon by this Court. It has, however, received consideration in other jurisdictions. The conclusion reached by courts in these jurisdictions are by no means uniform. There is such a diversity of opinion that it cannot be said that the weight of authority either sustains or rejects the proposition that such evidence is admissible on the issue of damages.
Maytag v. Cummins, 260 Fed., 74, filed 8 July, 1919, U.S. Circuit Court of Appeals, 8th Circuit, is cited as a leading case on this proposition. It is reported with full and exhaustive annotations in 16 A.L.R., 712.Sanborn, C. J., writing the opinion for the Court, states the question presented as follows: "Is it, then, the law that evidence of the voluntary and unauthorized repetition of a slander and of rumors and reports thereof by third persons and not under the control of and without the request of the originator is admissible in an action against him for damages caused by his utterances of it to others?" The Court held that such evidence is not admissible. The opinions of judges and text-writers, both for and against the proposition are reviewed and discussed. The conclusion is reached that the evidence is inadmissible, notwithstanding the circumstances under which the original slander was uttered. Stone, C. J., concurs in the result but dissents from the rule that one who originates a slander cannot be held for damages arising from repetitions which are the natural and probable consequences of the original utterance. He holds that there is such conflict in the decisions of the courts of various jurisdictions that it cannot be said that the weight of authority is either way. He says that the cases excluding such evidence are based upon the theory that damage flowing from such repetitions, rumors or reports is not the proximate result of the original slander unless authorized or intended by defendant. "This is an application to the law of defamation of the general rule that the intervention of an independent, illegal act breaks the causal chain, since the defendant cannot be held to have anticipated and (without evidence thereof) intended the unlawful act of another as the consequence of his wrong." He says further, "With the decisions of respectable jurisdictions conflicting, I see no reason for deciding that the matter has been authoritively settled. As no decision controlling in this Circuit exists and as decisions outside the Circuit conflict, this seems to me an instance where the justice of the contending views should be examined and a decision reached on that basis alone." *Page 14 
The slanderous words for which plaintiff seeks to recover were uttered in the presence of a large number of persons. They were uttered in a public place, in a loud and rough voice. The time was Saturday afternoon, between 6 and 7 o'clock. The person accused of stealing was a young girl, the daughter of respectable parents and a student in the city high school. These words were, under the law, actionable per se. Plaintiff alleged and offered to show that she was entitled to recover special damages in addition to the damages which the law presumed from the wrong done her. For this purpose she offered evidence that the news that she had been stopped in defendants' store and accused by one of its employees of stealing, spread rapidly among her friends and acquaintances who discussed the incident and that her reputation was injured and her feelings wounded and hurt as a consequence. The injury done her by the wrongful act of defendants was in some measure proportionate to the extent of the circulation. This wide circulation was the natural and probable result, not only of the slander, but also of the circumstances under which the slander was uttered. It was a result which defendants could and should have anticipated. They are and should be held answerable for the result, which, considering the circumstances under which the wrong was done, might reasonably have been anticipated. Whether the repetition of the slanderous words and the discussion of the incident with the resulting humiliation which plaintiff sustained was the direct and proximate result of the original slander was for the jury to determine. There was no error in overruling the objection to this evidence and the exception is not sustained. 36 C. J., 1230.
We hold it to be the law in this State that the author of a defamation, whether it be libel or slander, is liable for damages caused by or resulting directly and proximately from any secondary publication or repetition which is the natural and probable consequence of this act. He is not liable for such damages where the secondary publication or repetition is without authority from him, express or implied. If the defamation is uttered under such circumstances as to time, place or conditions as that a repetition or secondary publication is the natural and probable consequence of the original defamation and damage resulting therefrom, he is liable for such damages and evidence of such repetition or secondary publication and of damages resulting therefrom, is admissible. It is for the jury to determine under instructions of the court, whether in view of the circumstances under which the original defamation was uttered, a secondary publication or repetition was the natural and probable consequence of such defamation which could and should have been foreseen or anticipated by the defendant in an action for damages for the original defamation. *Page 15 
We have examined with care the other assignments of error directed to the instructions of his Honor to the jury. They are not sustained. We do not deem it necessary to discuss them. We find no errors of law or legal inference affecting the validity of the judgment from which defendants appeal. There is
No error.