## CHARLESTON.

MILLARD H. RIGNEY *v.* W. R. KEESEE & Co. INC., *et al.*

(No. 5906)

Submitted September 13, 1927.   Decided September 20, 1927.

1. LIBEL AND SLANDER—*If Defamatory Communication is Qualifiedly Privileged, Plaintiff Has Burden to Prove Malice, Except Where Inference Thereof Arises From Language.*

In libel, when the defamatory communication is made on an occasion of qualified privilege, the burden of proving malice is cast upon the plaintiff, except where the calumnious language is so violent as to raise an inference of malice. (p. 171.)

(Libel and Slander, 36 C. J. § 168.)

2.   SAME—*Author of Qualifiedly Privileged Libel is Not Respon-
     sible for its Republication, Unless he Contemplated or In-
     tended it Should be Made Public.*

The author of a libel, qualifiedly privileged, is not respon-
sible for its republication unless it appears that he contem-
plated or intended it should· be made public.   (p. 173.)

(Libel and Slander, 36 C. J. § 190.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
part of syllabi.)

Error to Circuit Court, Mercer County.   ·

Action by Millard H. Rigney against W. R. Keese & Co.,
Inc., and another.   Judgment for plaintiff, and defendants
bring error.

*Reversed.*

*Sanders, Crockett, Fox & Sanders,* for plaintiffs in error.
*Ajax T. Smith, R. L. Parsons,* and *John Kee,* for defendant·
in error.

HATCHER, PRESIDENT:

This is an action of libel in which the plaintiff recovered a
judgment of $2500.00 in the Circuit Court of Mercer County.

The defendant company is a dealer in Dodge Automobiles,
its territory embracing Mercer County.   Defendant H. X.
Morton is its treasurer.   It has a contract with W. W. Harloe
and E. Cacy, trading as W. W. Harloe and Company, by
which they sell automobiles for it at Matoaka.   It has an
agent C. E. Cumbie, who sells automobiles for it in Bram-
well.   The plaintiff was an employe of Harloe & Company.

Sometime before May, 1926, the defendant company wrote
to Cacy, that its agent Cumbie, had complained to it of plain-
tiff interferring with his sale of Dodge automobiles in Bram-
well, and stated that it did not desire any connection what-
soever with plaintiff.   Later the defendant wrote the fol-
lowing letter, which contains the libel:

W. W. Harloe and Company,
Matoaka, West Virginia.
Gentlemen:
    Information has come to us through our agent
at Bramwell, West Virginia, Mr. C. E. Cumbie,

that you sold a Dodge Brothers sedan to Mr. Safe-wright, of Bramwell. We were further advised that this deal was effected through the medium of one Millard Rigney.

Some weeks ago we wrote Mr. Cacy a letter requesting that he absolutely have nothing to do with Rigney—he is a bad character and can reflect nothing but discredit upon any organization, and if he were to offer his services to us free of charge we would have nothing whatsoever to do with him. Under the circumstances we are surprised and chagrined that Mr. Cacy would disregard our requests in this matter. Mr. Cumby is working for us in Bramwell in a sales capacity of 5% commission and Mr. Safewright was a prospect of his —he had demonstrated a car to Mr. Safewright, and we understand that Mr. Rigney's policy is that if a man will buy a car through him he will give him one-half of his commission on same. As I wrote Mr. Cacy this is not tolerated in our organization—no salesman is permitted to give a prospect any part of his commission. This sale is a violation of our contract with W. W. Harloe and Company and we are going to insist in the most emphatic terms that you send us check at once for 5% commission, or $47.25, for Mr. Cumbie. This is the end of the argument as far as we are concerned, and we want to say to you, Dr. Harloe, that we are very sorry this instance has occurred to break into the friendly relationship that has already been established between us.

Very truly yours,

W. R. Keesee & Co. Inc.

H. X. Morton.

The defendant Company sent a copy of the letter to Cumbie, and he showed it to several friends who were teasing him about plaintiff taking away his prospects for sale of cars.

Sometime after the letter was written, the plaintiff came to the office of Harloe & Company, bringing a Mr. O'Brien, of Bramwell, with whom he was negotiating the sale of an automobile. Cacy, explaining why he could not let plaintiff sell the car to O'Brien, produced the letter in question, and it was then read by O'Brien, as well as the plaintiff.

Morton testified that he never had entertained any ill will towards plaintiff, but that the letter was written solely through business reasons because it was his duty as a dealer, to protect his agent Cumbie from infringement; that the copy was sent to Cumbie in order to let him know what was being done in his interest; that he never "dreamed" the letter would be seen by a third party, and that his statement concerning plaintiff's character was based on information received from representatives of jobbing houses in Bluefield and Matoaka.

Error is charged to the trial court (a) in the giving and refusal of instructions, and (b) in the admission of evidence of republication of the letter by Cacy and Cumbie.

(a)   Three instructions were offered by the plaintiff, and seven by the defendant, all of which were refused by the trial court. Thereupon the court upon its own motion gave four instructions. Instruction No. 1 given by the court is as follows: "The court instructs the jury that in every instance of slander, whether verbal or written, malice is an essential ingredient and must be averred, but when averred, and the language, verbal or written, is proved, the law will infer malice until the proof in the event of denial be overthrown, or the language itself satisfactorily explained."

The letter from the defendant to Harloe and Company was a communication upon a matter in which both parties, as well as Cumbie, were interested. Under settled law, the communication was therefore *qualifiedly privileged. Ward* v. *Ward,* 47 W. Va. 766; 17 R. C. L. 341; Townshend, Slander and Libel, par 209; Newell, Slander and Libel, 4th Ed., section 341. The question of privilege is for the court. *Ward* v. *Ward, supra;* Newell, *supra,* Sec. 345. When a defendant establishes that the communication is one of qualified privilege, he is relieved of the implication of malice which accompanies communications not privileged, and the onus of proving malice is cast upon the plaintiff. In *White* v. *Nicholls,* 3 Howard 266, after an exhaustive investigation of the authorities on this subject, the Supreme Court of the United States concluded that in a case of privileged communication the plaintiff was required "to bring home to the defendant

the existence of malice as the true motive of his conduct." That case was decided in 1845. The years between have brought no modification of the rule announced in that opinion. *Ward* v. *Ward, supra;* Townshend, *supra,* Sec. 209; Newell, *supra,* Secs. 342 and 346; 17 R. C. L. page 342; 36 C. J. Sec. 205, page 1241. A more comprehensive expression of this rule is given in *Hanson* v. *Hanson,* 126 Minn. 426, 427, L. R. A. 1915 A, 104. "The communication being privileged, the burden is cast upon plaintiff to show malice in fact; that is, that the defendant was actuated by ill will or improper motive, or that he acted causelessly and wantonly, to the injury of the plaintiff. When made on a privileged occasion, the law does not imply malice from the communication itself nor from its falsity, as in the ordinary case of libel."

*Siever* v. *Coffman,* 80 W. Va. 420, is cited in support of the court's instruction. Point 2 of that syllabus, when considered without any reference to the facts and the opinion in the case, indicates that the burden remains with a defendant after establishing the privilege of a communication, to prove the truth of the slanderous utterance and the absence of malice therein. The facts in that case show that the defendant did not limit his defamatory communication to persons with whom he had a common interest, but as the opinion states "he went outside and communicated the same matters to disinterested persons." The defendant was therefore not entitled in that case to claim the benefit of privilege. The case was correctly decided and point 2 when considered in connection with the facts of the case is not erroneous. The statement in point 2 is defective in that it does not show that the defendant published the libel on occasions which were not privileged. There was no intention in that case to depart in any way from the ruling of this Court in *Ward* v. *Ward, supra.* Consequently that case in the light of the above explanation furnishes no support for the instruction given by the trial court, and we hold the same to be erroneous.

The evidence developed no personal animus towards plaintiff as a reason for Morton's derogatory statement; consequently the case fails for want of malice, unless the calum-

nious language is so violent as to raise an inference of malice. Whether such inference can be drawn from the language used, or the circumstances surrounding its use, is a question for the jury. *Tyree* v. *Harrison,* 100 Va. 540. In considering that question, however, the jury should be admonished to regard the language with some degree of lenity. "But when the occasion is privileged the tendency of the courts is not to submit the words to a too strict scrutiny, but rather to view them in the light of the facts as they appeared to the defendant; for the question is, not whether the imputations are true, but whether the words are such as the defendant might have honestly employed under the circumstances." *Strode* v. *Clement,* 90 Va. 553 (559).

Defendant's instructions 2 to 7 inclusive, are based on the principles approved herein, and should have been given except in so far as they are duplications.

(b) There is little concord among the decisions on this point. A few courts flatly hold that the author of a libel is not responsible for its unauthorized repetition; others hold the author liable if the repetition is the natural and probable consequence of the communication. Newell, *supra,* section 303. Some courts declare as a matter of law, that repetition is not the natural and probable result of a libel, while other courts say that it is. A comprehensive notation in 16 A. L. R., 726, shows the conflicting views on this subject. It seems to us that the better considered cases exonerate the author of such a statement from liability for its repetition, unless it appears that he intended or contemplated that it should be repeated. This holding is based on the legal principle that, "One illegal (wrongful) act can not be a natural and proximate consequence of another illegal (wrongful) act." Townshend, *supra,* secs. 201 and 202. That view is adopted by the Supreme Court of Massachusetts in *Burt* v. *Advertiser Co.,* 154 Mass. 238. The opinion in that case is entitled to special consideration, as it was written by Justice Holmes when a member of that court. It concludes: "Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not

bound to anticipate the general probability of such acts any more than a particular act by this or that individual.'' The same stand is taken by the Illinois Court: ''It would seem, both on principle and authority, that no liability attaches to the author of the libel for such reproduction, unless it is made by his authority or consent either express or implied.'' *Clifford* v. *Cochrane*, 10 Ill. App., 571 (577). Accord: *Schoepflin* v. *Coffey*, 162 N. Y. 12 (17).

In case of a privileged communication, such as the one here, the primary object of its author is to protect and advance his business interests, and not to affect the reputation of the one maligned. It is for that reason that he is relieved at law from any imputation of malice. Consequently, if we regard the author as having no animus toward, and no de-sire to injure the one libeled, it follows on principle that he should not be called to answer for a republication unless it appears that a republication was contemplated or intended by him.

There is no fact or circumstance in the evidence in this case tending to show that Morton contemplated or intended a republication. There is nothing to overcome his testimony to the contrary. The admission of the evidence of a republi-cation was therefore error.

For reasons assigned, the case will therefore be

*Reversed.*