## GUTHRIE v. GREAT AMERICAN INS. CO. et al.

### No. 5423.

Circuit Court of Appeals, Fourth Circuit.

Nov. 5, 1945.

George S. Wallace, of Huntington, W. Va., for appellant.

Stanley C. Morris, of Charleston, W. Va. (E. Loyd Leckie and Steptoe & Johnson, all of Charleston, W. Va., on the brief), for appellees.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

This appeal is taken from a directed verdict for both defendants in two suits for libel tried together in the District Court of the United States for the Southern District of West Virginia. Both actions arose from the same circumstances involving two insurance policies, one written by the Great American Insurance Company and the other by the Great American Indemnity Company. Herbert E. Guthrie brought two identical actions against the two companies under the West Virginia Statute of Insulting Words, to recover damages for alleged defamatory words contained in letters sent by the companies' underwriters to their local agent with respect to their decision to terminate the coverage of this particular risk. After hearing all the evidence, the judge ruled that the words complained of were privileged, that the privilege had not been abused, and that there was no evidence of malice. On the basis of these rulings, the judge directed the jury to bring in verdicts for the defendants and denied plaintiff's motion for a new trial. The plaintiff now brings this appeal.

■ There was no real dispute here as to the facts surrounding the publication of the words alleged to be actionable. The letters were written to their agent by the insurers in connection with the cancellation of policies issued through this agent. It seems clear that the District Court correctly held that the letters were privileged. Montgomery Ward & Co. v. Watson, 4 Cir., 55 F.2d 184; Alderson v. Kahle, 73 W.Va. 690, 80 S.E. 1109, 51 L.R.A.,N.S. 1198, Ann.Cas.1916E, 561; Swearingen v. Parkersburg Sentinel Co., 125 W.Va. 731, 26 S.E.2d 209. See, also, Newell, Slander and Libel, 4th Ed., 460.

■ The insurer, by express contract, had the absolute right, upon giving due notice, to cancel the policy for any reason, good or bad, or for no reason whatever. It follows that the insurer owed no legal duty to disclose to the plaintiff either the nature or source of the information which influenced the insurer's decision to cancel the policy.

Plaintiff, a dentist by profession, was also an enthusiastic flier. In connection with the operation of his airplane, he sought and obtained from defendants, through their agent Keister, a liability policy and a fire policy. Each policy contained a clause giving to the insurer the right of cancellation upon five days' written notice to the insured. After the policies had been in effect several weeks, the insurers decided to cancel the policies and a letter was written to the agent, Keister, containing these words:

"We exceedingly regret that we must ask you to obtain the originals of the above captioned policies for cancellation. This action on our part is the result of unfavorable information which we have received from a confidential source, which we are unable to disclose."

This letter was shown to plaintiff by the agent, Keister.

Thereupon, plaintiff, in a letter to Keister, demanded that he be informed of the nature of this "unfavorable information" and threatened suit if the information was not forthcoming. Keister forwarded this letter to defendants. Then defendants sent a second letter to Keister, containing these statements:

"As, with all other types of insurance, we reserve the right to accept, decline, to continue or to cancel risks as our underwriting judgment suggests.

"In our opinion, Dr. Guthrie, as an aviation insurance risk, does not meet with our underwriting standards. We understand that in the fatal accident which occurred sometime ago, investigation indicated Dr. Guthrie's innocence.

"Our opinion as to the desirability of this particular risk is predicated on a great number of circumstances and not on Dr. Guthrie's pilot ability alone. Therefore, we believe it would be to our advantage to be relieved of our liability under the captioned policies."

The West Virginia Statute of Insulting Words, Code 1931, c. 55, art. 7, § 2, Michie's Code, § 5471, reads as follow:

"All words which, from their usual construction and common acceptation, are construed as insults and tend to violation and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon."

It is unnecessary for us to add materially to the very able statement of this case by Judge Watkins in his charge to the jury. A careful examination of the record convinces us that his findings were amply justified. In only two respects do the points presented appear to require more extended consideration.

First is the plaintiff's contention that defendant's failure or refusal to disclose the information upon which its actions were based, so as to allow the jury to decide whether malice was present, in effect leaves a prima facie case for the plaintiff. This contention is not justified, since it assumes that the defendant in a libel action must prove not only privilege but also that the privilege was not abused and that malice was not involved. The rule is well established that proof of privilege by the defendant shifts the burden of going forward with the evidence to the plaintiff. Newell on Slander and Libel, 4th Ed., 315, 317; Rigney v. Keesee & Co., 104 W.Va. 168, 139 S.E. 650, 54 A.L.R. 1139. This burden plaintiff did not meet and he will not be heard to complain here of his own failure to prove his case in the lower court.

The remaining issue concerns the judge's failure to let the case go to the jury, in consideration of the provision of the statute that "no demurrer shall preclude a jury from passing thereon". The federal rule has long been fixed that it is the duty of the trial court to direct a verdict in such cases where the plaintiff fails to prove malice.

The application of this rule in an action brought under the identical West Virginia statute, with its provision against taking a case from the jury by demurrer, has already been passed on by this Court. In Montgomery Ward & Co. v. Watson, 4 Cir., 55 F.2d 184, 188, in an opinion by Judge Parker this Court held it to be reversible error to refuse to direct a verdict for defendant, and said:

"Where the language is of such a character that the jury would be justified in inferring malice from its use, the question of the existence of malice is, of course, one for their determination; but, where such inference cannot reasonably be drawn, or where the language and the circumstances attending its publication are as consistent with the nonexistence of malice as with its existence, the court should direct a verdict for defendant."

We see no reason to modify this holding. The West Virginia statute does not alter the defenses available at common law, nor should such a statute be construed to derogate from the powers of a federal judge, hearing the case under diversity of citizenship as a basis of jurisdiction, to follow established federal rules in proce-

dural matters. No error was, therefore, committed by the judge's direction of the jury's verdict.

The judgment of the District Court is affirmed.

Affirmed.