## Richmond

WESLEY JAMES WEAVER v. BENEFICIAL FINANCE CO., INCORPORATED
AND R. S. COSTIGAN.

June 14, 1957.

Record No. 4677.

Present, Hudgins C. J., and Eggleston, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*William N. Eason* (*Philip White*, on brief), for the plaintiff in error.

*Thomas H. Willcox* and *Edward R. Willcox, Jr.* (*Richard B. Spindle, III; Willcox, Cooke & Willcox*, on brief), for the defendants in error.

SNEAD, J., delivered the opinion of the court.

Wesley James Weaver, appellant, instituted action on June 8, 1956 against Beneficial Finance Co., Incorporated and R. S. Costigan, appellees, for compensatory and punitive damages in the sum of $50,000 "due to the republication on or about March 21, 1956," of a certain false, insulting and libelous letter written by appellees to appellant's employer on February 23, 1955.

Appellees filed a special plea in bar in which they averred that the action was barred by the statute of limitations. Appellant moved to dismiss the plea. The trial court overruled the motion to dismiss, sustained the special plea in bar and dismissed the motion for judgment with prejudice, to which action of the court appellant excepted. We granted plaintiff a writ of error.

No evidence was heard and the case is before us, as it was before the trial court, upon the motion for judgment and the special plea in bar. It is conceded by the parties that the one year statute of limitations applies (§ 8-24, Code 1950), and the sole question presented is whether or not the cause of action arose within one year from the date of institution of this action.

Appellant alleged in his motion for judgment that as additional security he gratuitously endorsed a note drawn by William E. Webster and Mary T. Webster, his wife, secured by a deed of trust on certain personal property for a loan of $300 advanced by the appellees to the Websters; that on January 29, 1955 appellees, through their agent, informed appellant that the Websters had defaulted in the monthly payments due on their note and called upon appellant to pay the balance due of $95, at which time appellant paid $5.20 and agreed to pay the then balance on or about June 15, 1955 which was satisfactory with appellees; that on February 23, 1955 appellees unlawfully and with malice wrote an insulting and libelous letter to Industrial Relations Officer, Naval Air Station, Norfolk, Virginia, appellant's employer, with intent to force payment which was not

due; that the libelous letter in question was republished on or about March 21, 1956 before a promotion board convened to consider appellant's record, at which time the contents of the letter were first made known to appellant; that the letter suggested that appellant was and is dishonest, insolvent and one to whom credit should not be extended; that it attacked his reputation for integrity; that appellees knew the libelous letter would be a permanent part of his record and would be republished in the future; that the republication of the letter was the natural and probable consequence of the appellees' act, and that the letter written and signed by appellee Costigan, manager of appellee Beneficial Finance Co., Incorporated, who was acting in the ordinary course of his employment, was authorized and ratified by appellee Beneficial.

The alleged libelous letter which was incorporated in the motion for judgment, is dated February 23, 1955, and reads as follows:

"On September 23, 1953, Mr. Weaver, who gave his employment as above secured a loan of $300.00. This money was lent on a fifteen months contract with payments of $24.29 per month. At no time has Mr. Weaver honored his contract promptly and now his account is four months past due. He refuses to answer any correspondence and personal calls have no effect.

"We realize that Government agencies can take no cognizance of a debt complaint against an employee beyond acknowledging receipt of the communication and that there is no legal jurisdiction over Federal pay excepting those matters relating to Government claims. However, it is understood that the Department of the Navy expects all Naval personnel to discharge acknowledged and just obligations and desires to cooperate with persons and firms when difficulty in obtaining settlements is encountered.

"Instigation of the removal of Mr. Weaver from his employment is not the intent of this company. However, we feel that if someone in a supervisory position will explain his liabilities and the possible effects of same upon himself, he will then be induced to bring his account to date and pay promptly thereafter.

"Any consideration given us in regard to this matter will be greatly appreciated."

Appellant's cause of action is grounded upon the republication of the letter, on March 21, 1956. He contends that appellees are liable since the republication was the natural and probable consequence of their act or that they actually or presumptively authorized

or directed its republication and that the statute of limitations did not begin to run until March 21, 1956, the date of such republication. On the other hand, appellees maintain that the cause of action against them arose on February 23, 1955, the date the letter was written or published, and not on March 21, 1956, the date it was republished by a third party.

[■] It is well settled that the author or originator of a defamation is liable for a republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication. This is based upon the principle that such republication constitutes a new cause of action against the original author. However, the original author is not responsible if the republication or repetition is not the natural and probable consequence of his act, but is the independent and unauthorized act of a third party.

In 53 C. J. S., Libel and Slander, § 85, p. 137, it is stated:

"The author of the defamation is liable for any secondary publication which is the natural consequence of his act; and this rule applies both to libel and to slander. On the other hand, the originator of a defamation is not libel for any repetition or republication thereof, or any additional circulation given to it which is not the natural consequence of his act, but results from the independent and unauthorized act of another, that is, where defamatory matter is republished by a person other than the original author, the author is not liable therefor unless the republication is the natural and probable consequence of his own act, or unless he has actually or presumptively authorized or ordered its repetition. Thus, the publisher of a newspaper or magazine has been held not responsible for the acts of third persons who, after the original publication, sell copies of the newspaper or magazine to others."

Newell, Slander and Libel (4th Ed.) § 303, p. 339, defines the author's liability for repetition by third persons as follows:

"Under the weight of authority the author of a libel or slander is not liable for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control, either as on a direct cause of action or by way of aggravation of damages, and such repetition cannot be considered in law a necessary, natural and probable consequence of the original slander or libel. But the rule has one important qualification. It is a general principle that every one is responsible for the necessary consequences

of his act, and it may be that the repetition of a slander or libel may be the natural consequence of the original publication, in which case the author of the original defamatory matter would be liable. And where the words declared on are slanderous per se their repetition by others is the natural and probable result of the original slander."

For a further discussion of the liability of the author of a defamation for republication and repetition by third persons, see 33 Am. Jur., Libel and Slander, § 196, p. 184 and § 197, pp. 185-186; *Sawyer v. Gilmers, Inc.*, 189 N. C. 7, 126 S. E. 183, 41 A. L. R. 1184, and for a discussion of the rules applicable to newspapers and magazines see *Hartmann v. Time*, 166 F. 2d 127, 1 A. L. R. 2d 370.

In 53 C. J. S., Libel and Slander, § 83, p. 136, it is said "As a general rule, each time defamatory matter is brought to the attention of a third person there is a new publication constituting a separate cause of action against the person responsible for such new publication." In *Irvine v. Barrett*, 119 Va. 587, 591, 89 S. E. 904, 905, Judge Whittle, speaking for the court, stated "It would seem plain on principle that no matter on how many separate occasions one may utter slanderous words about another (though all may refer to the same transaction) each slander constitutes a new cause of action." *Cf Jean v. Hennessy*, 69 Iowa 373, 375, 28 N. W. 645.

"When the right of action has been once barred by the statute of limitations, it cannot be revived by an admission of defendant that he did utter the slanderous words, nor can the running of the statute be prevented by repetitions of the slander, although, of course, a separate action will lie for any repetition within the statutory time." 53 C. J. S., Libel and Slander, § 156, p. 239, *Cf. Jean v. Hennessy, supra.*

■ This action is expressly based on a republication of the alleged libelous letter on or about March 21, 1956 and not upon the original publication on or about February 23, 1955. If it be determined by the jury that the republication thereof was the natural and probable consequence of the original publication, or that appellees actually or presumptively authorized or directed its republication, then this latter publication constitutes a separate cause of action, and suit was timely instituted against appellees who were responsible for the new publication.

Appellees stated in their letter to Industrial Relations Officer "Instigation of the removal of Mr. Weaver from his employment is not

the intent of the company. However, we feel that if someone in a supervisory position will explain his liabilities and the possible effects of same upon himself, he will then be induced to bring his account to date and pay promptly thereafter." The jury could conclude from this statement that appellees were requesting that the letter be republished to his superiors at a future date or that the republication was the natural and probable consequence of their act.

Appellees cite *Housing Authority* v. *Laburnum Corp.*, 195 Va. 827, 80 S. E. 2d 574 in support of their contention that the cause of action occurred on February 23, 1955, when the letter was published, and that the one year limitation commenced at that time. In that case it was alleged that a defective union in a gas pipe installed by defendant's subcontractor caused the damages claimed. There was only one installation of the pipe and, therefore, only one wrong committed. We held that the plaintiff's cause of action arose and the statute of limitations began to run when the defective pipe was installed, although it was not discovered until later. The case at bar is distinguishable in that this action is not based on the original publication of the letter, but upon a republication thereof at a later date when its contents were revealed by the Industrial Relations Officer to a promotion board. The republication was a new wrong and the alleged cause of action arose at this time. Our holding in this case does not impair the rule enunciated in *Housing Authority* v. *Laburnum Corp.*, *supra*.

Appellees argue that when defamatory material is republished by a third person and such republication is a natural and probable consequence of the author's act, or is presumptively or actually authorized or directed to be republished by a third person, the principles stated above relate merely to the damages which follow from the original publication. Hence, they say, this does not change the rule that the statute of limitations begins to run when the cause of action initially arises.

It is true that in an action based on an original publication, evidence of a republication bears on the quantum of damages. But that is not the case here. When, as the motion here alleges, the republication of a libelous article by a third person is the natural and probable result of what the wrongdoer did, or its republication is actually or presumptively authorized or directed by the original wrongdoer, then the republication goes not merely to increase the

damages of the injured person, but gives the latter a new cause of action against the original author.

As has been said, this action was brought on the republication of the letter, which is an alleged new cause of action. It necessarily follows that if the jury should conclude that its republication resulted from the natural and probable consequence of appellees' act, or that they actually or presumptively authorized or directed its republication, then the statute of limitations did not begin to run until on or about March 21, 1956, the date of such republication.

For the reasons stated, the judgment will be reversed and the case remanded for a trial on the merits.

*Reversed and remanded.*

BUCHANAN and WHITTLE, JJ., dissenting.

BUCHANAN, J., dissenting.

I cannot assent to the proposition that the statute of limitation on the alleged libel in this case runs not from the date of its publication but from the date of the alleged republication. It seems to me unwise to establish the principle that after the publication of a libelous letter a new and independent cause of action arises against its author each time its recipient shows it to some third person if, in the opinion of a jury, the recipient's act was a natural and probable consequence of the original wrong, or was actually or presumptively authorized by the author. On that basis suits may be brought, I suppose, just as long as the author lives and the recipient is able to exhibit the letter.

I do not understand the authorities cited in the court's opinion to say that every such republication establishes a new date from which the limitation begins to run. They simply say that it is generally agreed that the author of a defamation who publishes it is liable for the injurious consequences of a republication thereof by the person to whom it is addressed if such republication is authorized or is the natural and probable result of the original publication. 33 Am. Jur., Libel and Slander, § 197, p. 185. Or, as expressed in 53 C. J. S., Libel and Slander, § 83, p. 136, there is in such event "a separate cause of action against *the person responsible* for such new publication." (Emphasis added) That is far from saying that a new cause of

action, subject to a new period of limitation, arises against the original author of the libel in every instance that the libel is published afresh by the person who first received it.

The question dealt with by the authorities cited in the opinion is whether liability against the author exists for such republication, not how long it will continue; and the question has usually arisen on the admissibility of evidence in actions against the original author relating to repetitions or new publications of the original libel. Not all the courts have agreed as to the extent of the original author's responsibility and a different rule is generally recognized as between libel and slander. See the opinion of Judge Sanborn in *Maytag* v. *Cummins*, 171 C. C. A. 110, 260 F. 74, 16 A. L. R. 712 and Annotation at 726.

*Sawyer* v. *Gilmers, Inc.*, 189 N. C. 7, 126 S. E. 183, 41 A. L. R. 1184, dealt with the admissibility of evidence of repetition of a slander by third persons in an action against the author of it. The court said:

"We hold it to be the law in this state that the author of a defamation, whether it be libel or slander, is liable for damages caused by or resulting directly and proximately from any secondary publication or repetition which is the natural and probable consequence of his act. He is not liable for such damages where the secondary publication or repetition is without authority from him, express or implied. If the defamation is uttered under such circumstances as to time, place, or conditions as that a repetition or secondary publication is the natural and probable consequence of the original defamation and damage resulting therefrom, he is liable for such damage and evidence of such repetition or secondary publication and of damages resulting therefrom is admissible."

A libel is published when the defamatory writing is read by or otherwise communicated to someone other than the person defamed. *Weidman* v. *Ketcham*, 278 N. Y. 129, 15 N. E. 2d 426. When that is done the wrong is committed, the cause of action arises and the limitation on the right to sue should begin at that time. Questions of repetition and republication are relevant on the quantum of damages, depending in libel cases on whether the repetition or republication was authorized by the author or was a natural and probable consequence of the original act. *Jean* v. *Hennessy*, 69 Iowa 373, 28 N. W. 645, cited in the court's opinion, seems to hold no more than that. See also Newell, Slander and Libel, 4 ed., § 299, p. 336; *Wolfson* v. *Syracuse Newspapers*, 279 N. Y. 716, 18 N. E. 2d 676;

*Gregoire* v. *G. P. Putnam's Sons*, 298 N. Y. 119, 81 N. E. 2d 45; *Rigney* v. *W. R. Keesee & Co.*, 104 W. Va. 168, 139 S. E. 650, 54 A. L. R. 1139; 53 C. J. S., Libel and Slander, § 156, p. 238.

We aligned ourselves pretty closely with this view in *Luhring* v. *Carter*, 193 Va. 529, 69 S. E. 2d 416. There the action was brought for a slander which was alleged to have occurred December 16, 1948. Later the plaintiff filed a bill of particulars alleging a repetition of the slander. The defendants moved to strike out this allegation on the ground that it had the effect of allowing the plaintiff to amend his original action and it was argued that it set up a new and distinct cause of action committed January 9, 1949, not by the defendants but by a third party, and a tort that was actually barred by the statute of limitations before the bill of particulars was filed. We held that the repetition was a natural and probable result of the slander and an element of damage that was a natural, direct and probable result of the original wrong, and "that the bill of particulars did not state a new and distinct cause of action against defendants nor was it an amendment to the original notice of motion. It only particularized, specified, and pointed out the intended and accomplished result of the original statements and the damages directly caused thereby."

The present opinion states that in an action on the original publication evidence of a republication bears on the quantum of damages. That would necessarily be because it is an element of the original cause of action, as held in *Luhring* v. *Carter*. To say now, contrary to that holding, that a republication creates a new and distinct cause of action is to give the plaintiff two causes of action for an element of damage arising from the same wrong.

We are committed in Virginia to the rule that in tort actions the limitation on the right to sue begins to run when the wrong is committed and not when the plaintiff discovers that he has been damaged. *Street* v. *Consumers Min. Corp.* 185 Va. 561, 39 S. E. 2d 271; *Housing Authority* v. *Laburnum Corp.*, 195 Va. 827, 838, 80 S. E. 2d 574, 581.

I think the judgment below should be affirmed.

Mr. Justice Whittle joins in this dissent.