# CIRCUIT COURT OF THE CITY OF WINCHESTER

Sonja Wilson

v.

Miller Auto Sales, Inc., et al.

Case No. (Law) 97-281

Angel Turner

v.

Miller Auto Sales, Inc., et al.

Case No. (Law) 97-282

Tabetha Humble

v.

Miller Auto Sales, Inc., et al.

Case No. (Law) 98-26

September 17, 1998

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on September 4, 1998, on the Plaintiffs' demurrers and pleas of the statute of limitations filed in response to the five count Counterclaim of Miller Auto Sales, Inc. Marilyn A. Solomon, Esquire, appeared for the Plaintiffs, and Brad D. Weiss and James A. Klenkar, Esquires, appeared for the Defendant Miller Auto Sales. After the Court announced some of its rulings, counsel for the Defendants asked for leave to file supplemental authorities, and the parties were directed to file any additional authorities which they wished the court to consider on or before September 9, 1998, which authorities were filed and considered by the Court.

1. Upon consideration whereof, it is adjudged and ordered that Humble's, Wilson's, and Johnson's demurrers to Miller Auto's Counterclaim are overruled as to Count I, Statutory Conspiracy Count.

To recover in an action for conspiracy to harm a business, the plaintiff must prove (1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business and (2) resulting damage to plaintiff. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592 (1984); *Meadow, Ltd. Partnership v. Heritage Sav. & Loan Ass'n*, 639 F. Supp. 643 (E.D. Va. 1986). Proof of civil conspiracy must be shown by clear and convincing evidence. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522 (4th Cir. 1997); *Pierce Oil Co. v. Voran*, 136 Va. 416, 430, 118 S.E. 247 (1923). "Any two or more persons who combine, associate or mutually undertake together for the purpose of willfully and maliciously injuring another in his ... trade, business or profession by any means whatsoever" shall be liable civilly for treble damages. Virginia Code §§ 18.2-499 and 18.2-500. These statutes "merely require the proof of legal malice, i.e., that ... [the defendant] acted intentionally, purposely, and without lawful justification." *Commercial Business Systems v. BellSouth*, 249 Va. 39, 47 (1995).

In *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 28, 431 S.E.2d 277 (1997), the Supreme Court discussed the elements of a viable civil conspiracy action:

The second count deals with conspiracy, both common-law conspiracy and statutory conspiracy. The common law recognizes a cause of action against those who conspire to induce the breach of a contract, even when one of the alleged conspirators is a party to the contract. *Worrie v. Boze*, 198 Va. 533, 540-41, 95 S.E.2d 192, 198-99 (1956). "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." *Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942). To recover in an action for statutory conspiracy to harm a business, a plaintiff must prove a combination of two or more persons "for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession," Code § 18.2-499, and resulting damage to the plaintiff, Code § 18.2-500. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592, 596 (1984). *See Tazewell Oil Co. v. United Va. Bank*, 243 Va. 94, 107-09, 413 S.E.2d 611, 618-19 (1992).

Count I of Miller's counterclaim is a statutory conspiracy action based on Virginia Code § 18.2-499 *et seq.* Given the Court's ruling on the defamation counts, it would appear that the conspiracy action to survive would have to be based on the Plaintiffs' alleged concerted actions to interfere with Miller's employment relationship with its employee, Jackson. Drawing all inferences in favor of the pleading, Count I of Miller's Counterclaim will withstand demurrer.

2. Humble's, Wilson's, and Johnson's demurrers to Miller Auto's Counterclaim are overruled as to Count II, Tortious Interference with a Contractual Relationship.

The tort of interference with an existing at will contract is comprised of four elements:

1. The existence of the contract.

2. Knowledge of the existence of a contract on the part of the defendant.

3. "The use of *improper* methods in the intentional interference causing a termination of the contract."

4. Resulting damage to the party whose contract was disrupted.

*See, Hilb, Rogal and Hamilton Co. of Richmond v. Depew*, 247 Va. 240, 245-246, 440 S.E.2d 918 (1994).

While there is no technical requirement as to the kind of wrongful conduct that constitutes interference, examples of such conduct include false and

defamatory statements, fraud and misrepresentation, coercion, violence or threats of violence, persuasion or inducement to breach, informing an employer of an employee's debt. *See*, generally *Restatement (2d) of Torts*, § 766, Comment K (1977). However, the interference must be both intentional and accomplished through improper methods. *Duggin v. Adams*, 234 Va. 221, 227-228, 360 S.E.2d 832 (1987). Generally, it is a jury question as to whether the actor's methods are improper.

Proof of actual malice or ill will is not necessary in order to recover for a breach of an existing contract that is not terminable at will. *Chaves v. Johnson*, 230 Va. 112, 121, 335 S.E.2d 97 (1985). What is required is legal malice, which is defined as the intentional doing of a harmful act without legal justification or excuse. Consequently, legal malice is proven where it is proven that the defendant had knowledge or grounds to know of the contract or expectation and induced a party to breach the contract or thwart the economic expectation without justification. However, actual malice is required in order to obtain an award of punitive damages. *Worrie v. Boze*, 198 Va. 533, 543, 95 S.E.2d 192 (1956).

"In the context of causes of action involving interference with a business relationship, freedom of action is balanced against protection of the business relationship involved to determine whether the affirmative defense of justification or privilege precludes liability for actions which would otherwise be culpable." *Chaves*, 230 Va. at 121, 335 S.E.2d at 103.

In this case, the plaintiffs complained to higher management about the conduct of Jackson, a co-employee. If those complaints were fabricated to get Miller to fire Jackson, and Miller as a result fired Jackson, then a viable inference with an existing contractual relationship could be asserted; therefore, Count II will withstand demurrer.

3. Humble's, Wilson's, and Johnson's demurrers to Miller Auto's Counterclaim are sustained as to Count III, Tortious Interference with Business Relations.

In *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449 (1984), the Supreme Court of Virginia held that an action for interference with prospective contractual relations arises from an intentional, improper interference with another's contractual relations, and this interference must (1) induce or otherwise cause a third party not to enter into a prospective contract with the Plaintiff or (2) prevent the Plaintiff from entering into the contract. Similarly, in *Wright v. Castles*, 232 Va. 218, 224 (1986), the Virginia Supreme Court held that to prove tortious interference with a contract, the Plaintiff must show "that the Defendants intentionally and improperly interfered with his

contractual relations by causing a third party not to enter into a prospective contract with him."

In this case, there is no allegation of any prospective business relationship that was interfered with or thwarted as a result of the plaintiffs' actions. If there was interference by improper methods, it was with Miller's at will relationship with Jackson as alleged in Count II.

4. Humble's, Wilson's, and Johnson's demurrers to Miller Auto's Counterclaim are sustained as to Count IV, the Breach of Fiduciary Duty right of action. Fiduciary duties frequently arise in the context of agency relationships. *See State Farm Mut. Ins. Co. v. Weisman*, 247 Va. 199, 203, 441 S.E.2d 16 (1994). "An agent is a fiduciary with respect to matters within the scope of his agency." *Restatement (Second) of Agency* § 13. The significance of imposing fiduciary duties upon an agent is that it restricts the permissible range of the agent's actions and requires that the agent act solely in the interests of his principal. *See generally Restatement (Second) of Agency* §§ 387-398. As the editors of 3 Am. Jur. 2d, *Agency*, § 228, state:

> For reasons of public policy the law does not permit an agent to assume any relationship antagonistic to his duty to his principal, and the underlying basis of the rule is to shut the door against temptation and keep the agent's eye single to the rights and welfare of his principal.

The agent "must not deal in the agency matter for his own account." 3 Am. Jur. 2d, *Agency*, § 228. Nor may the agent act "in the agency transaction for a party whose interests are adverse in the matter to those of his principal." 3 Am. Jur. 2d, *Agency*, § 241. *See Va. Real Estate Comm. v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125-26 (1983); and *Bruce's Ex'x v. Bibb's Ex'x*, 129 Va. 45, 49-50, 105 S.E. 570, 572 (1921).

These fiduciary principles are generally applied in the context of the agent's duties *vis a vis* third parties and opportunities which may present themselves to the agent during the course and scope of the agency. If the agency is a limited agency, generally, fiduciary duties do not arise. *Stacy v. C. J. Montgomery Ins. Corp.*, 235 Va. 328 (1988) (employment of insurance agent to "procure and maintain" fire insurance coverage was a special, not general, grant of authority, so no fiduciary relationship arose). Breach of fiduciary duty rights of action have arisen in the following agency contexts: *Hilb, Rogal & Hamilton Co. of Richmond v. DePew*, 247 Va. 240, 246, 440 S.E.2d 918, 921 (1994) (stating that an employee's fiduciary duty to his

employer prohibits the employee from acting in a manner adverse to the employer's interest); *Greenwood Assoc. v. Crestar Bank,* 248 Va. 265, 448 S.E.2d 399 (1994) (bank owes fiduciary duty to customer during foreclosure proceedings on customer's property); *Long & Foster Real Estate, Inc. v. Clay,* 231 Va. 170, 343 S.E.2d 297 (1986) (real estate agent and principal); *Hooper v. Musolino,* 234 Va. 558, 364 S.E.2d 207 (1988) (partners); and *Musselman v. Willoughby Corp.,* 230 Va. 337, 337 S.E.2d 724 (1985).

Miller has cited no cases to support its theory that the failure to follow "Miller's policy regarding reporting sexual harassment and [failure] to timely and adequately make any complaints to Miller until after they had resigned from the company and accepted other employment," Defendant's Memo, p. 4., gives rise a violation of fiduciary duty right of action. The cases cited by Miller in its supplemental memorandum are all ones in which an employee attempted to usurp the business of his employer, which is not the case at bar. Compliance with an internal complaint policy is just one of the many incidental duties of the employee arising from her employment, and it is not the type of special trust or confidence situation between an employer and employee upon which fiduciary duties are imposed.

5. Wilson's and Johnson's demurrers to Miller Auto's Counterclaim, Count V, Defamation, are sustained. Humble's demurrer to Miller Auto's Counterclaim, Count V, Defamation, is overruled.

In this case, Miller claims that the Plaintiffs' respective complaints that John Miller, Miller's Vice President, failed to properly investigate their complaints that Miller's employee sexually harassed them in the work place defamed Miller. The allegedly defamatory words were not pleaded *in haec verba* in the counterclaim, as is required in a defamation action, so the Court directed Miller to set forth in its memorandum the exact words which Miller claimed were defamatory. Miller did this on pages 8 to 11 of its Memorandum in Opposition to Plaintiff's demurrer, and Miller stated as follows:

*Tabetha Humble*

*EEOC Charge:* In the sworn charge, signed under penalties of perjury, filed with the EEOC, Ms. Humble makes allegations regarding Mark Jackson's purported conduct and states, "After complaining of the behavior to the Vice President, John Miller, no action was taken to investigate the matter, nor were there any actions taken against the harasser. This inaction led to my eventual constructive discharge from my employment."

*EEOC Affidavit*: Ms. Humble contradicts her prior sworn statement in the EEOC charge, stating, "I did not complain to any managers of Respondent about Mr. Jackson's sexual harassment, but I did complain about it to Ms. Wilson, Ms. Johnson and Mr. Hammack." Ms. Humble further contradicts her prior statement to the EEOC, saying, "I did not complain about Mr. Jackson's conduct during the time that I worked at Respondent because I was afraid of losing my job."

## Angel Johnson Turner

*Charge of Discrimination*: In the statement filed by Ms. Turner with the EEOC, Ms. Turner makes claims regarding Mr. Jackson's conduct and states, "Ultimately, I complained to company owner, John Miller, but no action was taken against Mr. Jackson. The situation continued to make me so upset and uncomfortable, I was forced to leave my job."

*Resignation Letter*: Ms. Turner's resignation letter, dated the same day that she left, states: "My last day of employment is April 30, 1996."

*Letter of Complaint*: Her only complaint to Miller was dated May 1, 1996, the *day after she left the company*. This contradicts the implication from her EEOC statement that Mr. Miller's purported inaction after she had complained was the reason for her departure.

## Sonja Wilson

*Charge of Discrimination*: Ms. Wilson makes allegations regarding Mr. Jackson's behavior as follows:

"I complained to company owner, John Miller about him. We discussed in some detail the other complaints Mr. Miller received regarding Mr. Jackson, so I know I was at least the fifth woman to register such complaints about Mr. Jackson. Mr. Miller asked me whether I would like to leave my employment or move to another Miller store. I did not understand why I would have to leave and not Mr. Jackson. Mr. Miller went on to explain that he needed a letter of complaint to take action against Mr. Jackson, but he made no assurances regarding what action would be taken.

"The situation continued to make me so upset and uncomfortable, I was forced to leave my job."

*Letter of Resignation*: Ms. Wilson's resignation letter, dated June 13, 1996, states, "Friday, June 14th, will be my last day. I apologize

for the short notice *but I have accepted a job at Kern Motor Co. and I need to start Monday.*"

*Letter of Complaint*: Ms. Wilson's written complaint to Mr. Miller was dated June 15, 1996, *after she resigned and had left Miller*. The letter was not delivered until September or October 1996 when Marilyn Solomon forwarded the copy of the letter. Therefore, her statement that the situation continued after she complained to Miller is false and could not be the basis for her resignation.

In the recent case of *Perk v. Vector Resources Group, Ltd.*, 253 Va. 310, 316, 485 S.E.2d 140 (1997), the Supreme Court affirmed the trial court's sustaining of a demurrer to a libel action, where an attorney sued defendants whom he claimed defamed him by telling some of a hospital's debtors that certain payments made by the debtors had not been reported by the attorney. In ruling, the Supreme Court stated: "At common law, defamatory words which are actionable *per se* include … *[t]hose which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. Those which prejudice such person in his or her profession or trade.*" (Emphasis added.) *Id. quoting Carwile v. Richmond Newspapers*, 196 Va. 1, 7, 82 S.E.2d 588, 591 (1954). *See also Great Coastal Express* v. *Ellington*, 230 Va. 142, 147, 147 334 S.E.2d 846 (1985). "A statement which ascribes to another conduct, character, or a condition which would adversely affect her fitness for the proper conduct of her lawful … profession is defamatory without proof of special harm." 50 Am. Jur. 2d, *Libel and Slander*, § 212. The statements in this case about an alleged failure to properly investigate a claim of sexual harassment and take appropriate action do not state an action for libel *per se*.

The first step in any defamation analysis is to examine the words used to determine whether the language can be fairly viewed to impugn the reputation of the plaintiff. Reputation is personal to the individual, so defamation derives from an attack directed at the individual as opposed to an attack on ideas or opinions espoused by the individual, which in a free society are generally fair game for discussion and attack. "[T]he threshold question in defamation suits is whether a reasonable factfinder could conclude that the published statements imply a provably false factual assertion … ." 50 Am. Jur. 2d, *Libel and Slander*, § 106.

"To determine if a publication is defamatory, the Court must look at the entire communication and not examine separate sentences or portions or with an eye constrained to the objectionable feature alone. Construction will be

derived from the expressions used in the whole scope and apparent object of the writer." 50 Am. Jur. 2d, *Libel and Slander*, § 124. "Allegedly defamatory statements must be construed from the standpoint of the average reader or average lay reader. The test is what construction would be placed upon such language by the average reasonable person or the general public." 50 Am. Jur. 2d, *Libel and Slander*, § 127.

In *Chapin v. Greve*, 787 F. Supp. 557, 561-563, (E.D. Va. 1992)*aff'd sub nom. Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), the United States District Court for the Eastern District of Virginia undertook an extensive discussion of the current resolution of the tension between the First Amendment right to free expression and the personal right to protection of a individual's reputation against calumnious criticism through a defamation action:

Under Virginia law, the necessary elements of the tort of defamation are (1) publication about the plaintiff, (2) an actionable statement, and (3) the requisite intent. See Michie's Jurisprudence, *Libel and Slander*, § 12 ... .

To defame a person is to attack his or her good name, thereby injuring his or her reputation. *See* Webster's II New Riverside University Dictionary (1984). But not every unflattering or unwelcome remark will sustain a libel suit. To be defamatory as a matter of law, a statement must be "more than merely unpleasant or offensive;" it must "make the plaintiff appear odious, infamous, or ridiculous." *McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 540 F. Supp. 1252, 1254 (D. D.C. 1982), *aff'd in part and rev'd in part on other grounds*, 230 App. D.C. 403, 717 F.2d 1460 (D.C. Cir. 1983). *See also* R. Sack, *Libel, Slander and Related Problems* 45 (1980) ("There is common agreement that a communication that is merely unflattering, annoying, irksome, or embarrassing, or that hurts the plaintiff's feelings, without more, is not actionable."). Statements may be defamatory by implication, inference, innuendo, or insinuation, provided the alleged defamatory meaning is plain. *See, e.g., Milkovich*, --- U.S. at --- , 110 S. Ct. at 2707; *White v. Fraternal Order of Police*, 285 App. D.C. 273, 909 F.2d 512 (D.C. Cir. 1990); *Wilder*, 551 F. Supp. at 623; *General Products v. Meredith Corp.*, 526 F. Supp. 546 (E.D. Va. 1981); *Gazette*, 325 S.E.2d at 713; *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 82 S.E.2d 588, 591-92 (1954). The established test under Virginia law for divining whether statements are defamatory is found in *Carwile*:

"Although varying circumstances often make it difficult to determine whether particular language is defamatory, it is a general rule that allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used … . In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor. However, the meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it cannot introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain." 82 S.E.2d at 591-92 (citations omitted). Moreover, a plaintiff cannot combine the damaging nature of certain true statements with the falsity of other, immaterial statements in order to provide the basis for a defamation claim. *See AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000 (4th Cir. 1990).

In *Yeagle v. Collegiate Times*, 255 Va. 293 (1998), the Vice President of Student Affairs at V.P.I. sued a student newspaper claiming that it had libeled her, and the Supreme Court of Virginia had the opportunity to apply the *Milkovich* opinion versus fact analysis, and it stated:

Whether statements complained of in a defamation action fall within the type of speech which will support a state defamation action is a matter for the trial judge to determine as a matter of law, just as the trial judge, not the finder of fact, must determine whether a statement is defamatory *per se* because it imputes the commission of a crime involving moral turpitude. *Chaves v. Johnson*, 230 Va. 112, 119, 335 S.E.2d 97, 102 (1985); *Great Coastal Express, Inc. v. Ellington*, 230 Va. 142, 148, 334 S.E.2d 846, 850 (1985).

None of the allegedly defamatory statements directly impugn the professional integrity or competence of Miller Auto Sales, Inc., and none of the statements constitute libel *per se. See Perk v. Vector Resources Group, Ltd.*, 253 Va. 310, 316, 485 S.E.2d 140 (1997). Wilson's and Turner's statements viewed most favorably to Miller's defamation action against them

are that they complained to John Miller and no action was taken against Jackson, the offending employee. This does not impugn Miller's reputation or subject him to ridicule.

Defamation may be premised on statements imputing a crime. *Chaves v. Johnson*, 230 Va. 112, 119, 335 S.E.2d 97, 102 (1985); *see generally* 50 Am. Jur. 2d, *Libel and Slander*, §§ 27-59. However, no violation of criminal law is stated, nor can any be reasonably inferred from the quoted statements. Given the vast web of civil laws to which an employer is subject, there are many civil law violations which, even if falsely stated, would not be the type of statement ordinarily calculated to expose an individual to ridicule, contempt, or disgrace. For example, a false statement about an employer that he had violated a local ordinance requiring grass above a certain height to be mowed could not be a premise for a defamation action. However, drawing all inferences in favor of the pleading, it can be inferred that a false accusation that Miller's management was hostile to women employees has been alleged at least as to Humble, and, in the modern work place, this could be the subject of a defamation action. *See* 50 Am. Jur. 2d, *Libel and Slander*, § 109 (unfairness or unfriendliness to labor). "It is the function of the court, not the jury, to determine whether or not an imputation is susceptible of a defamatory meaning … ." 50 Am. Jur. 2d, *Libel and Slander*, § 22.

Further factual development will be required to determine the viability of the defamation action against Humble. Considering the underlying facts upon which the plaintiff's claims are based, the statements recited in the Defendant's memorandum are as sterile and devoid of direct accusations as can be imagined. These statements were made in the context of a complaint to the EEOC, to which this court has held that a qualified privilege attached. Nonetheless, Humble's demurrer to Miller's Counterclaim, Count V, is overruled.

6. Humble's, Wilson's, and Johnson's Pleas of the Statute of Limitations to Miller Auto's Counterclaim based on alleged defamation, Count V, are sustained. The statute of limitations for defamation is one year. Virginia Code § 8.01-248. More than one year has elapsed between the original publication of the allegedly defamatory statements which Miller claims are defamatory and the filing of the original motion for judgment in this case. Since the counterclaims filed in this case arise "out of the same transaction or occurrence upon which the plaintiff's claim is based, the statute of limitations with respect to such pleading shall be tolled by the commencement of the plaintiff's action." Virginia Code § 8.01-233(B).

To avoid the bar of the statute of limitations, Miller argues that newspaper articles describing the Plaintiffs' claims are new causes of action within the one year period of the statute of limitations. Miller Memorandum, p. 12. Relying on *Weaver v. Beneficial Finance Co.*, 199 Va. 196, 98 S.E.2d 687 (1957), Miller argues that newspaper reports on the filing of the Plaintiffs' lawsuits against Miller in this case are a republication, which gives rise to a new right of action, because the republication by the newspaper was a natural consequent of the original defamatory publication by the plaintiffs, and that usually the jury determines whether the republication was a natural consequence of the initial libelous statement. *See also Luhring v. Carter*, 193 Va. 529, 537, 69 S.E.2d 416 (1952).

Miller has given *Weaver* and *Luhring, supra*, a broader scope than has ever been given them by the Supreme Court of Virginia. In *Weaver*, the defamation action was based on a letter which the Defendant sent in 1955 to the Plaintiff's employer, who in 1956 showed the letter to a promotion board to the plaintiff's detriment, and the Supreme Court held that the employer's showing of the letter to the promotion board in 1956 was a natural consequence of the 1955 libelous letter, which comes as no surprise, because the *Weaver* letter was the source of both publications. However, in the case at bar, there is a break in the chain of causation, because the newspaper article was a result of the Plaintiffs' filing their law actions against Miller not the original, alleged, defamatory publications, which Miller has cited to the Court in its memorandum.

In *Weaver v. Beneficial Finance Co.*, 199 Va. 196, 199-200, 98 S.E.2d 687 (1957), the Supreme Court reviewed numerous authorities in reaching its decision and quoted them with approval:

Under the weight of authority the author of a libel or slander is not liable for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control, either as on a direct cause of action or by way of aggravation of damages, and such repetition cannot be considered in law a necessary, natural and probable consequence of the original slander or libel. But the rule has one important qualification. It is a general principle that every one is responsible for the necessary consequences of his act, and it may be that the repetition of a slander or libel may be the natural consequence of the original publication, in which case the author of the original defamatory matter would be liable. And where the words declared on are slanderous *per se* their repetition by others is the natural and probable result of the original slander.

For a further discussion of the liability of the author of a defamation for republication and repetition by third persons, see 33 Am. Jur., *Libel and Slander*, § 196, p. 184, and § 197, pp. 185-186; *Sawyer v. Gilmers, Inc.*, 189 N.C. 7, 126 S.E. 183, 41 A.L.R. 1184, and for a discussion of the rules applicable to newspapers and magazines, see *Hartmann v. Time*, 166 F.2d 127, 1 A.L.R.2d 370.

In 53 C.J.S., *Libel and Slander*, § 83, p. 136, it is said "As a general rule, each time defamatory matter is brought to the attention of a third person there is a new publication constituting a separate cause of action against the person responsible for such new publication." In *Irvine v. Barrett*, 119 Va. 587, 591, 89 S.E. 904, 905, Judge Whittle, speaking for the court, stated "It would seem plain on principle that no matter on how many separate occasions one may utter slanderous words about another (though all may refer to the same transaction) each slander constitutes a new cause of action." *Cf. Jean v. Hennessy*, 69 Iowa 373, 375, 28 N.W. 645.

"When the right of action has been once barred by the statute of limitations, it cannot be revived by an admission of defendant that he did utter the slanderous words, nor can the running of the statute be prevented by repetitions of the slander, although, of course, a separate action will lie for any repetition within the statutory time." 53 C.J.S., *Libel and Slander*, § 156, p. 239; *cf. Jean v. Hennessy, supra.*

This action is expressly based on a republication of the alleged libelous letter on or about March 21, 1956, and not upon the original publication on or about February 23, 1955. If it be determined by the jury that the republication thereof was the natural and probable consequence of the original publication, or that appellees actually or presumptively authorized or directed its republication, then this latter publication constitutes a separate cause of action, and suit was timely instituted against appellees who were responsible for the new publication.

Virginia has adopted the "natural and probable consequence of the original publication" exception to the statute of limitations in defamation actions. *See* Annot., *Liability of Publisher of Defamatory Statement for its Repetition or Republication by Others*, 96 A.L.R.2d 373 (1967). The words alleged in this case are not libel *per se*, and Miller has cited no cases in which the rule was applied to a republication in a newspaper article reporting on the filing of a lawsuit. The language of the *Weaver* opinion indicates that Virginia, despite adoption of the natural consequence exception, still follows the general

rule that "the author or publisher of a defamatory statement incurs no liability, either as a distinct cause of action, or by way of enhancing the damages of the original publication, by reason of a voluntary repetition or republication of the defamatory matter *by others who act independently.*" 50 Am. Jur. 2d, *Libel and Slander*, § 172 (emphasis added).

In *Watt v. McKelvie*, 219 Va. 645, 248 S.E.2d 826 (1978), the Supreme Court considered the effect that a republication in a judicial proceeding had on the statute of limitations in a defamation action, and it held that third party statements made during the course of a judicial proceeding which are relevant to the subject matter of the litigation are absolutely privileged and may not be used to impose civil liability upon the originator of the statements. The public interest is best served when individuals who participate in lawsuits are allowed to conduct the proceeding with freedom to speak fully on the issues related to the controversy. The *Watt* Court expressly distinguished *Weaver v. Beneficial Finance Co.*, 199 Va. 196, 98 S.E.2d 687 (1957), on the ground that the *Weaver* republication did not arise in a privileged judicial proceeding. *Watt v. McKelvie, supra,* at 650.

The *Watt* Court expressly ruled that policy considerations do not limit the judicial proceeding privilege to the actual participants in the legal proceeding in which the republication occurred, but it also extends to the original author of the defamatory statement.

The report by the newspaper was the result of the Plaintiff's filing the pending action against Miller; it was not a result or natural consequence of the plaintiffs' complaints to the EEOC. "[I]n the defamation context, an actor has an absolute privilege and is not liable for defamatory statements made in the course of a judicial proceeding." *Maximus, Inc. v. Lockheed Information Mgmt. Sys. Co.*, 254 Va. 408, 412, 493 S.E.2d 375 (1997), *citing Massey v. Jones*, 182 Va. 200, 204, 28 S.E.2d 623, 626 (1944); *Penick v. Ratcliffe*, 149 Va. 618, 627, 140 S.E. 664, 667 (1927). Miller cannot rely upon the newspaper reports of the plaintiffs' privileged statements in their motion for judgment to revive the expired defamation action.

7. Humble, Wilson, and Johnson shall file a grounds of defense to Counts I and II on or before October 2, 1998.

8. Plaintiff Humble's, Wilson's, and Johnson's Motion to Compel discovery from Miller Auto and for costs and sanctions is deferred until the September 24, 1998, Motions Day.

9. Plaintiff Humble's Motion to Quash the witness subpoena served upon her former attorney Dove is granted, unless the plaintiff identifies Dove as a witness, in which case, Miller may depose Dove.

10. Plaintiffs' motions to sever the trials of these cases are denied.

11. Plaintiff Humble's motion to increase her ad damnum to the maximum amount permitted by Title VII, 42 U.S.C. § 2000(e), given the number of Miller's employees, is granted.

12. Miller's Motion to Compel Discovery from Plaintiff Humble is deferred until September 24, 1998.