Richmond

## CHARLES V. WATT
### v.
## WILLIAM H. McKELVIE

November 22, 1978.

Record No. 770738.

Present: All the Justices.

Paul M. Peatross, Jr. (Carter & Peatross, on brief), for plaintiff in error.

Edward R. Slaughter, Jr. (McGuire, Woods & Battle, on brief), for defendant in error.

COMPTON, J., delivered the opinion of the Court.

In this appeal arising from a defamation action, we consider whether the author, or original publisher, of slanderous statements is liable to the person defamed when republication of the statements was made by third persons during the course of judicial proceedings.

Appellant Charles V. Watt brought this suit for compensatory and punitive damages against appellee William H. McKelvie, Joseph H. Calicott and Raymond E. Hogan based on the republication of certain oral statements alleged to be defamatory and made initially by McKelvie. McKelvie filed several special pleas and the other defendants jointly filed a demurrer. Upon consideration of the pleadings, stipulations of fact and argument of counsel, the trial court, in a written opinion, sustained one of McKelvie's special pleas as well as the demurrer of Calicott and Hogan. We granted Watt a writ of error to the February 1977 final order dismissing the action as to all defendants. Calicott and Hogan are not parties to this appeal.[1]

---

[1] We note the recital in the order appealed from that McKelvie's "third special plea" was sustained and that the "first, second, fourth and fifth special pleas [were] moot". Yet the third special plea was not addressed to the portion of plaintiff's motion for judgment dealing with the specific occasion upon which the precise republication here in issue occurred. That plea was directed to a paragraph of plaintiff's declaration reciting another republication which is not in dispute here. Nevertheless, we are satisfied from an examination of the trial judge's memorandum opinion, the transcript of the hearing on the pleas and the trial briefs that the issue debated on appeal was presented and decided below.

These are the facts, insofar as pertinent to the issues raised in this appeal, as gleaned from the pleadings and stipulations of counsel. During the period of time in question, plaintiff Watt was self-employed as a manufacturer's agent representing major medical firms "with respect to hospital furniture, equipment and supplies". In addition, he was self-employed as an independent medical design and marketing consultant, also "with respect to hospital furniture, equipment and supplies." McKelvie was likewise a manufacturer's agent; he represented "manufacturers and suppliers of hospital and laboratory equipment, fixtures, furnishings, supplies and other hospital laboratory services." In 1972 Watt and McKelvie signed a contract in which Watt agreed to represent McKelvie's clients as a manufacturer's agent.

In December of 1973, Watt entered into a contract with Lynchburg General-Marshall Lodge Hospitals, Inc., in connection with renovation of a laboratory at the hospital. Watt agreed to perform medical design consulting work with respect to laboratory furniture, equipment and supplies. That contract was executed on behalf of the hospital by defendant Hogan, its Executive Vice President.

In the present suit, Watt alleged that in February of 1975, after McKelvie learned of Watt's contract with the hospital, McKelvie uttered the allegedly slanderous statements in separate telephone calls to defendant Hogan and to defendant Calicott, a physician in the hospital's Department of Pathology. The statements, according to plaintiff's pleading, reported that even though Watt had represented himself to be an independent consultant at the time he entered into the hospital contract and when he subsequently prepared plans which carried "Watt's name as a company," Watt was, in fact, associated with McKelvie in representing Portable Laboratories, Inc. (Porta-Lab), a laboratory furniture manufacturer. Watt further alleged that McKelvie stated that the plans and specifications provided to the hospital by Watt, including room layouts and placement of laboratory furniture, were not prepared by Watt, but were prepared by Porta-Lab. Watt also alleged that shortly after the telephone calls, McKelvie made a personal visit to Hogan and reiterated his previous statements. According to Watt's allegations, he entered into the hospital contract, not as a represen-

tative of Porta-Lab but individually as an independent consultant. He further asserted that all of McKelvie's statements to Calicott and Hogan in issue were untrue.

In April of 1975, in the Circuit Court of Albemarle County, the hospital and McKelvie each filed separate civil suits against Watt using, according to Watt's allegation in the present case, McKelvie's "slanderous statements as a basis for said suit[s]". In March of 1976, during the course of giving depositions in Charlottesville relating to the Albemarle County suits, Calicott and Hogan, testifying under oath, repeated McKelvie's allegedly defamatory 1975 statements in the presence of a Notary Public, two attorneys and Watt; McKelvie was not present. According to Watt, he first learned during this 1976 deposition hearing of McKelvie's slanderous statements. This suit ensued, being filed in July of 1976, and is based upon the 1976 republication.

The trial court, in deciding in favor of the defendants below, ruled that "discovery deposition procedures undertaken within the purview of the Rules of Court of the Supreme Court of Virginia constitute a judicial proceeding." The court further found that "testimony given therein is absolutely privileged if material to the subject matter involved in the action to which the discovery procedure is a part." He thus found that Hogan and Calicott, as well as McKelvie, were immune from liability to the plaintiff for the republication of McKelvie's 1975 statements which occurred during the 1976 deposition hearing.

On appeal, plaintiff does not dispute that Hogan and Calicott were protected from civil liability, as the result of their deposition testimony, by the absolute privilege which attaches to the relevant testimony of a witness during a judicial proceeding. *See Elder* v. *Holland*, 208 Va. 15, 21, 155 S.E.2d 369, 374 (1967); *Penick* v. *Ratcliffe*, 149 Va. 618, 140 S.E. 664 (1927). But plaintiff contends that the privilege afforded Hogan and Calicott for their republication of McKelvie's slander should not be extended to McKelvie, who was not a participant in that hearing. Relying on *Weaver* v. *Beneficial Finance Co.*, 199 Va. 196, 98 S.E.2d 687 (1957), plaintiff argues that the republication created a new cause of action for slander against McKelvie and that the trial court erred in holding to the contrary.

In *Weaver*, as here, the one-year statute of limitations, then Code § 8-24, created a problem for the plaintiff. There Weaver alleged he had been defamed by defendants in a letter written in February of 1955 to his employer, the Industrial Relations Officer of the Naval Air Station in Norfolk. The letter was placed in Weaver's file held by the employer and was republished in March of 1956 when the Industrial Relations Officer revealed its contents to a promotion board convened to consider Weaver's employment record. Weaver first learned of the letter upon the republication and filed suit in June of 1956. The trial court sustained defendants' plea of the statute of limitations, but this court reversed. There, the court held that the March republication constituted a separate cause of action if the republication was the natural and probable consequence of the original publication or if defendants actually or presumptively authorized its republication. 199 Va. at 200, 98 S.E.2d at 691. The case was remanded for a trial on the merits to determine the factual questions of causation and authorization.

The present case, plaintiff's argument continues, "reflects the essential fact pattern of *Weaver* but for one noteworthy factual difference, . . . the republication in the present case was made in an absolutely privileged deposition hearing." On the basis of *Weaver*, plaintiff says, "a cause of action for slander lies against McKelvie unless the absolutely privileged circumstances of the March 2, 1976 deposition hearing protect him."

The plaintiff argues that the policy behind the privilege existing as to judicial proceedings of encouraging unrestricted speech on the issues presented supports the proposition that the privilege attaches only to the republishers and not to the words republished. He recognizes that the privilege stems from the necessity, in the public interest, of a free and full disclosure of facts in judicial proceedings, which outweighs the right of the individual to enjoy his reputation unimpeached by defamatory remarks. But plaintiff contends that the privilege in this case should not be extended beyond the participants Hogan and Calicott to the non-participant McKelvie because such an extension is unnecessary to assure unrestricted investigation of the facts during

the judicial proceeding and because such extension interferes with the individual's right to protect his reputation. To support his position, plaintiff relies on the following *Restatement* Comment:

> If the person who repeats the defamation is privileged to repeat it, the repetition does not prevent the original defamation from being the legal cause of the resulting harm. In such a case, the person who repeats the defamation is not liable to the other because of the privilege. The person defamed, however, may vindicate his reputation by an action against the person who first published the defamation.

*Restatement (Second) of Torts* § 576, Comment b (1977).[2] Plaintiff contends that an analogous rule prevails in England, *Derry* v. *Handley*, 16 L.T.R. 263 (1867), the rationale being that where there is no recovery from the republisher because of privilege, it is more reasonable to hold the originator liable than to deny a recovery altogether. *See* Painter, *Republication Problems in the Law of Defamation*, 47 Va. L. Rev. 1131, 1135 n.15 (1961).

We disagree with plaintiff's contentions. *Weaver* is inapposite here. As the plaintiff has recognized, the significant difference between the facts of *Weaver* and the facts of this case is that in *Weaver* the republication did not occur in a judicial proceeding. Indeed, this court's decision there did not mention privilege, absolute or qualified, and an examination of the record and briefs in that case reveals that such issue was not addressed by counsel.

The ultimate consideration here is one of policy. So the question becomes whether any new cause of action which may have arisen

---

[2] Comment b of the *Restatement, supra,* is based upon the following rule, which is essentially the same as its predecessor, *see Restatement of Torts* § 576 (1938):

Harm Caused by Repetition

The publication of a libel or slander is a legal cause of any special harm resulting from its repetition by a third person if, but only if,

    (a)  the third person was privileged to repeat it, or

    (b)  the repetition was authorized or intended by the original defamer, or

    (c)  the repetition was reasonably to be expected.

*Restatement (Second) of Torts* § 576 (1977).

upon a third-party republication during a judicial hearing may be asserted against the non-participating original publisher or whether the immunity which attaches to the participants in the proceeding applies to such original publisher who may thus assert the privilege as an absolute defense when sued by the person allegedly defamed. We adopt the latter alternative, thus rejecting the *Restatement* view.

We hold that third-party statements made during the course of a judicial proceeding, which are relevant to the subject matter of the litigation, *see Penick* v. *Ratcliffe*, 149 Va. at 631-37, 140 S.E. 668-70, are absolutely privileged and may not be used to impose civil liability upon the originator of the statements. The rule which we now adopt is based on the policy, already alluded to *supra*, underlying the privilege which attaches to judicial proceedings generally. We believe the public interest is best served when individuals who participate in law suits are allowed to conduct the proceeding with freedom to speak fully on the issues relating to the controversy. *See* Veeder, *Absolute Immunity in Defamation: Judicial Proceedings*, 9 Colum. L. Rev. 463, 477-78 (1909).

■ And we are not persuaded by the plaintiff's argument that policy considerations should limit the privilege only to the actual participants in the proceeding. The participant often may be motivated by a desire to shield a non-participant. Manifestly, a person testifying in a judicial proceeding who believes that his statements would precipitate an action for defamation against a non-participant such as a family member, business associate, relative or friend, would tend to be less candid and forthright in his disclosures during interrogation and thus inhibit full and free investigation of the facts. Accordingly, we refuse the invitation to limit the application of this absolute privilege to participants only. *But see Laun* v. *Union Electric Co. of Missouri*, 350 Mo. 572, 166 S.W.2d 1065 (1942).

For these reasons, we find no error in the action of the trial court in dismissing plaintiff's claim. Consequently, the judgment in favor of defendant will be

*Affirmed.*