## CIRCUIT COURT OF FAIRFAX COUNTY

Timothy R. Ranney

v.

Priscilla D. Nelson
and Carol M. Ranney

April 20, 2004

Case No. (Law) 218653

BY JUDGE JANE MARUM ROUSH

This matter came before the court on February 27, 2004, for a hearing on the demurrers of defendants Priscilla D. Nelson and Carol M. Ranney. At the hearing, the Court sustained Mrs. Ranney's demurrer in its entirety, sustained Ms. Nelson's demurrers to counts I, II, III, and V, and took under advisement Ms. Nelson's general demurrer to the Motion for Judgment based on the claim of judicial privilege. For the reasons stated below, the court will enter an order sustaining Ms. Nelson's general demurrer to the Motion for Judgment. Mr. Ranney will be granted leave to amend his motion for judgment to allege a cause of action for professional malpractice based on Ms. Nelson's alleged actions in destroying her handwritten notes and producing falsified typewritten notes and billing statements, assuming he can do so consistent with the requirements of Va. Code § 8.01-271.1.

The purpose of a demurrer is to determine, as a matter of law, whether facts as they are pleaded are sufficient to pursue the relief sought. See *Votsis v. Ward's Coffee Shop, Inc.*, 217 Va. 652, 231 S.E.2d 236 (1977). A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged. *CaterCorp, Inc. v. Catering, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277 (1993).

32

Turning to the allegations of the Motion for Judgment, we see that Mr. Ranney alleges that he and Mrs. Ranney were married in April 1998 and separated in April 2002. & 1.[1] Ms. Nelson, a licensed psychotherapist, provided marriage counseling to the Ranneys prior to their separation. & 1. After the couple's separation, Mrs. Ranney continued as a patient of Ms. Nelson. && 13, 14. Mr. Ranney sued Mrs. Ranney for divorce. & 10. Mr. Ranney also filed a separate civil suit against Mrs. Ranney, alleging damages for "fraud in inducement in the marriage" and "defamation of character." & 11. Mr. Ranney served Ms. Nelson with a subpoena *duces tecum* seeking all documents in her possession related to the Ranneys. & 18. During her counseling sessions with the Ranneys, Ms. Nelson took handwritten notes. & 20. Ms. Nelson was under a legal duty to produce the notes. & 21. The subpoena was returnable to May 8, 2003. & 24. On May 7, 2003, Ms. Nelson met with Mrs. Ranney. At that time, Ms. Nelson still had her handwritten notes from her sessions with the Ranneys. & 24. During or shortly after that meeting, Ms. Nelson shredded the authentic handwritten notes. & 24. On May 8, 2003, in response to the subpoena, Ms. Nelson produced for Mr. Ranney's counsel falsified typewritten notes and presented them as original documents accurately reflecting her sessions with the Ranneys. & 25. The typewritten notes were prepared for the specific purpose of falsifying the contents of the Ranneys' counseling and to assist Mrs. Ranney in her defense of the two cases Mr. Ranney filed against her. & 26. The original notes were favorable to Mr. Ranney. & 27. In further response to the subpoena, Ms. Nelson later produced falsified billing records. & 33. In July 2003, Ms. Nelson was deposed in Mr. Ranney's fraud and defamation case against Mrs. Ranney. In that testimony, Ms. Nelson presented the fabricated notes as originals and testified that they were genuine. & 35. In October 2003, Ms. Nelson testified at the commissioner's hearing in the Ranneys' divorce case. & 36. At that hearing, Ms. Nelson again presented the fabricated notes as her originals and testified that they were genuine. & 35. (In paragraphs 36 through 49 of the Motion for Judgment, Mr. Ranney details the alleged falsities in Ms. Nelson's typewritten notes and testimony.)

In the present suit, Mr. Ranney alleges causes of action against Ms. Nelson for violation of the Virginia Consumer Protection Act (Count I), spoliation and fabrication of evidence (Count II), fraudulent concealment (Count III), malpractice (Count IV), and conspiracy (Count V). He seeks compensatory and punitive damages in an unspecified amount. Following the Court's order of March 8, 2004, the only count remaining in the case is Count IV, alleging malpractice against Dr. Nelson. In that count, Mr. Ranney alleges

---

[1] All paragraph references are to the numbered paragraphs in the Motion for Judgment.

that Ms. Nelson violated her duties to "use reasonable care in providing services" and "of good faith and fair dealing." He alleges further that Ms. Nelson had a "conflict of interest" in her dealings with the Ranneys. Finally, Mr. Ranney alleges that he was damaged as a result of Ms. Nelson's breaches of her various duties to Mr. Ranney.

Ms. Nelson demurs to the motion for judgment, arguing that she is immune from civil liability for her role in the litigation between the Ranneys, as her alleged acts and omissions were made in a judicial proceeding and are absolutely privileged.

Mr. Ranney responds that the absolute privilege for judicial proceedings means only that "words spoken in a court proceeding are absolutely privileged when a claim is for defamation or related torts. These cases have nothing to do with torts involving destruction or fabrication of evidence." Mr. Ranney's Opposition to Demurrer at p. 3.

It is "well settled" that there exists an absolute privilege in judicial proceedings. *Donohoe Construction v. Mount Vernon Assoc.*, 235 Va. 531, 537, 369 S.E.2d 857 (1988). Under that privilege, "words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged." *Id.* False, misleading, or defamatory communications, even if published with malicious intent, are not actionable if they are material to, and made in the course of, a judicial or quasi judicial proceeding. *Penick v. Ratcliffe*, 149 Va. 618, 140 S.E. 664 (1927). The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation. *Watt v. McKelvie*, 219 Va. 645, 248 S.E.2d 826 (1978). See also *Restatement (Second) of the Law of Torts*, § 588 (1977).

In *Watt v. McKelvie*, supra, it was held that:

> Third-party statements made during the course of a judicial proceeding, which are relevant to the subject matter of the litigation are absolutely privileged and may not be used to impose civil liability upon the originator of the statements. ... We believe the public interest is best served when individuals who participate in law suits are allowed to conduct the proceeding with freedom to speak fully on the issues relating to the controversy.

*Watt v. McKelvie, supra*, 219 Va. at 651 (internal citation omitted).

Although the absolute privilege for judicial proceedings typically arises as a defense to a defamation action, it is not limited to actions for defamation, libel or slander. *Watt v. McKelvie* held the privilege, if applicable, bars "civil liability," not merely civil liability for defamation. Similarly, in *Lockheed Information Mgmt. Sys. v. Maximus*, 259 Va. 92, 524 S.E.2d 420 (2000), the

issue was whether the privilege protected Lockheed from liability for claims of tortious interference with contract expectancy and statutory conspiracy. Although the Virginia Supreme Court did not find the privilege existed in *Lockheed*, that holding was not based on the causes of action asserted. Instead, the Court found that the statement in issue had not been made in a judicial proceeding. Implicit in the Court's rationale in *Lockheed* is the Court's view that, if established, the absolute privilege for judicial proceedings could bar an action for tortious interference or statutory conspiracy.

Mr. Ranney argues that the absolute privilege for judicial proceedings protects only words spoken in judicial proceedings and not the act of destroying and fabricating evidence. This court agrees with Mr. Ranney that the absolute privilege for judicial proceedings does not extend to the act of destroying and fabricating evidence. This court has already ruled in this case that Virginia does not recognize an independent cause of action for the tort of spoliation of evidence under the facts of this case. See Court's Order of March 8, 2004. The great majority of the remaining allegations of the motion for judgment all concern Ms. Nelson's testimony in litigation that was pending between the Ranneys. Therefore, this court will sustain the demurrer without leave to amend as to all allegations, however styled, that concern any testimony that Ms. Nelson gave at either the commissioner's hearing in the divorce case or her deposition in the fraud and defamation case. Even if false, Ms. Nelson's testimony is entitled to absolute immunity. There are ample safeguards in the adversary process to detect and punish false testimony. Ms. Nelson could be subject to a criminal prosecution for perjury, for example.

For the foregoing reasons, Ms. Nelson's demurrer to the Motion for Judgment on the basis that her actions are protected from civil liability by the absolute privilege for judicial proceedings will be sustained. This court has previously sustained Ms. Nelson's demurrer to Counts I, II, III, and V of the motion for judgment. Leave will be granted to Mr. Ranney to replead Count IV to allege, if he can consistent with Code § 8.01-271.1, that Ms. Nelson breached the standard of care for psychotherapists when she destroyed her handwritten notes and produced fabricated typewritten notes and billing statements.