COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Friedman, Frucci and Senior Judge Humphreys
Argued at Fredericksburg, Virginia


SAMUEL ROLOFSON

v.      Record No. 0535-23-4

BRITTANY FRASER                                    OPINION BY
                                         JUDGE STEVEN C. FRUCCI
BRITTANY FRASER                               JULY 30, 2024

v.      Record No. 0828-23-4

SAMUEL ROLOFSON


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Tania M.L. Saylor, Judge

Andrew C. Nichols (Timothy P. Bosson; Charis Lex P.C.; Bosson
Legal Group, P.C., on briefs), for Samuel Rolofson.

J. Andrew Baxter (Heba K. Carter; Erika M. Gnazzo; General
Counsel, P.C., on briefs), for Brittany Fraser.


This consolidated appeal arises out of the dismissal of a defamation case following a plea

in bar and asks whether the circuit court erred by: (1) dismissing Samuel Rolofson's defamation

claims against Brittany Fraser arising from a May 15, 2020 Board of Inquiry[1] ("BOI") hearing as

"qualifiedly privileged" without permitting him to present evidence of malice, (2) dismissing

Rolofson's defamation claim against Fraser arising from an alleged defamatory statement made

on April 29, 2021; and (3) concluding that the Virginia Anti-SLAPP[2] statute, Code § 8.01-223.2,

---

[1] BOIs are investigatory boards that look into alleged misconduct of officers.

[2] The acronym SLAPP stands for Strategic Lawsuit Against Public Participation.

did not apply.[3]  The statutory construction issues presented in Fraser's cross-appeal are matters of first impression.  For the following reasons, we affirm the circuit court on all assignments of error.

BACKGROUND

Samuel Rolofson and Brittany Fraser are Army officers who dated briefly in 2017 while both were stationed at Fort Bragg, North Carolina.[4]  After the end of their romantic relationship, Fraser made allegations about Rolofson's behavior to the military chain of command. Following, his chain of command initiated an investigation, which resulted in Rolofson receiving a General Officer Memorandum of Reprimand ("GOMOR").  The GOMOR reprimanded Rolofson "for harassing" Fraser, "and for using [his] official duty position . . . to wrongfully revoke the security access of an enlisted Soldier."  The GOMOR found that Rolofson "sent [Fraser], and members of her team, text messages that made her feel uncomfortable[,]" and that Rolofson had "demonstrate[d] a complete lack of judgment and responsibility" and "discredited" himself.

The commanding general who reviewed Rolofson's GOMOR ordered a BOI hearing to determine whether Rolofson "harass[ed] Captain Fraser" and "use[d] his authority as a military intelligence officer to remove an individual's access" to a building.  The BOI hearing was heard on May 15, 2020.  During the hearing, Fraser made numerous statements regarding Rolofson's behavior.  Following, the BOI officers recommended Rolofson's dismissal from the Army, but

---

[3] As the statements at issue were published in North Carolina, it could be argued that North Carolina law applies.  The issue of whether North Carolina or Virginia law applies, however, was not discussed during litigation at the circuit court level, nor was it briefed on appeal.  Accordingly, this Court will assume without deciding that Virginia law applies, pursuant to the law of the case doctrine.  *See Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 27 (2008).

[4] Now known as Fort Liberty.

upon review, the Deputy Assistant Secretary of the Army for Review Boards retained Rolofson in the service. On April 29, 2021, Fraser allegedly told Rolofson's superiors that "she was in fear of her life because [Rolofson] knew her address and had sued her." Allegedly, because of Fraser's statements and the GOMOR, Rolofson will be administratively separated from the Army on April 1, 2025.

On September 30, 2021, Rolofson filed a complaint for defamation in the Circuit Court of Fairfax County. By agreement, Rolofson filed an amended complaint on December 10, 2021, adding prayers for declaratory and injunctive relief in addition to the monetary damages. The amended complaint alleged that the statements made by Fraser about Rolofson during the May 15, 2020 BOI hearing were defamatory. Fraser allegedly stated that Rolofson had abused his authority by deleting Sergeant Roman Nazario's[5] name from a security computer, which limited Nazario's access to certain buildings. The amended complaint also alleged that Fraser had defamed Rolofson by stating that he was a threat to her health and safety on April 29, 2021. Rolofson asserted that Fraser's defamatory statements had harmed him "in the form of loss of deployment, loss of career furthering opportunities, and ostracization within his work place."

Fraser filed a "Demurrer, Plea in Bar, and Motion to Dismiss," asserting, in relevant part, that Rolofson's claims were "subject to qualified privilege" and barred under Virginia's Anti-SLAPP statute, Code § 8.01-223.2. In her supporting brief, Fraser argued that her statements, as alleged in the amended complaint, were "qualifiedly privileged," because she "had a duty to report" the matters to military authorities during the BOI hearing. Rolofson's responsive brief countered that Fraser had defamed him maliciously, which defeated her claims of privilege and immunity.

---

[5] Fraser alleges that Rolofson accused her of having an inappropriate relationship with Sergeant Nazario, a non-commissioned officer who was also stationed at Fort Bragg.

At an evidentiary hearing to address the statute of limitations' effect on additional statements Rolofson alleged Fraser made in 2017 and claims of qualified privilege, and anti-SLAPP protections for all alleged statements made by Fraser, the parties disagreed regarding whether the circuit court needed to hear evidence. Fraser wanted to present evidence, and because she bore the burden on the plea in bar, the circuit court permitted her to introduce evidence she thought necessary to meet her burden.

Fraser did not address her qualified privilege defense at the hearing. Consistent with that posture, the circuit court repeatedly stated that the "only" matters before it were the statute of limitations issue and whether the claims were barred by the anti-SLAPP statute.

Captain Guybert Paul, a judge advocate for the United States Army, also testified at the plea in bar hearing.[6] Captain Paul had prosecuted Rolofson at the May 15, 2020 BOI hearing, which was presided over by a colonel and two lieutenant colonels. The presiding officers at BOI hearings generally must determine whether questions or charges by a general officer are "substantiated" by a "preponderance of the evidence." The presiding officers then recommend whether the subject individual should be "separate[d]" from the Army, under "honorable" or "other than honorable" conditions. BOI hearings may involve sworn witness testimony, are open to the public, and are subject to FOIA requests. The rules of evidence, including hearsay rules, do not apply at BOI hearings.

At the conclusion of the hearing, the circuit court sustained the plea in bar to the 2017 statements on statute of limitations' grounds and ordered supplemental briefing on the anti-SLAPP statute immunity. The circuit court subsequently sustained the plea in bar, finding that

---

[6] Captain Paul testified that the purpose of the BOI hearing is to determine whether the allegations of misconduct are substantiated by a preponderance of the evidence, and if so, to make a recommendation as to whether the accused should be separated from the military. 10 U.S.C. § 14903.

Fraser's statements during the May 15, 2020 BOI hearing were "qualifiedly privileged." The circuit court acknowledged that a qualified privilege does not apply to statements "made with malice" but found that Fraser's credible testimony "was sufficient to overcome the allegations of malice." The circuit court further found that, although it was Rolofson's burden to prove malice, he had offered no evidence of malice at the hearing. Addressing the third count of defamation for Fraser's April 29, 2021 statement, the circuit court noted that the parties had presented no evidence regarding those statements and that the pleadings were too conclusory and alleged merely "an expression of [Fraser's] opinion, which is not actionable as defamation." The circuit court expressly rejected Fraser's arguments that the claims were barred under the anti-SLAPP statute, finding that the statements at the BOI hearing were not "a matter of public concern" under the anti-SLAPP statute and that the BOI hearing itself was not a "public hearing before the governing body of any locality or other political subdivision."

Rolofson objected to the circuit court's ruling, arguing that the qualified privilege claim was not "properly in front of the Court" during the plea in bar hearing. He asserted that Fraser had not raised the claim at the hearing and that the circuit court had refused to allow him to introduce evidence of malice. Rolofson also stated that the circuit court should have granted him leave to amend his complaint. Fraser sought reconsideration of the circuit court's anti-SLAPP rulings. The circuit court denied the motion. Rolofson timely appealed, and Fraser cross-appealed.

ANALYSIS

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "The party asserting the plea in bar bears the burden of proof." *Id.* If the "parties present evidence on the plea ore tenus, the circuit court's factual

- 5 -

findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Id.* But we review de novo the circuit court's "application of the law to the facts." *Ferguson v. Stokes*, 287 Va. 446, 450 (2014).

I. *The circuit court's decision to dismiss Rolofson's defamation claim due to qualified privilege*

Rolofson challenges the circuit court's rulings that Fraser established a qualified privilege and that he then failed to overcome that qualified privilege by presenting evidence of malice. Rolofson argues that the circuit court took no evidence on qualified privilege and stated twice that the only questions before the circuit court were Fraser's statute of limitations and anti-SLAPP defenses. Consequently, he alleges that the circuit court was bound by his pleadings in the amended complaint on the qualified privilege claim, which expressly alleged that Fraser had maliciously defamed him. As we find that the record established Fraser's statements were absolutely privileged, we need not decide the issues of malice or qualified privilege. *Banks v. Commonwealth*, 280 Va. 612, 617 (2010).

This Court will "not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground." *Id.* (quoting *Eason v. Eason*, 204 Va. 347, 352 (1963)). Indeed, even if the "right ground" was not presented to the circuit court, we may sustain its judgment provided the record supports the right ground and no "additional factual presentation is necessary to resolve the newly-advanced reason." *Perry v. Commonwealth*, 280 Va. 572, 580 (2010). The record "supports an alternative ground for affirmance" when "all evidence necessary to that ground was before the circuit court." *Banks*, 280 Va. at 617. If that evidence was conflicting, then the record must also show how the circuit court resolved the dispute. *Id.* Here, the circuit court reached the right result,

though for a different reason, because the undisputed evidence before the circuit court demonstrated that Fraser's statements were absolutely privileged.

"In the law of defamation, there are two types of privileges – absolute and qualified." *Isle of Wight County v. Nogeic*, 281 Va. 140, 152 (2011). Where qualified privilege can be defeated by a showing of malice, "the maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false." *Id.* (quoting *Lindeman v. Lesnick*, 268 Va. 532, 537 (2004)).

> The rule of absolute privilege "is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice, or before a tribunal or officer clothed with judicial or quasi-judicial powers," and includes "any proceeding for the purpose of obtaining such remedy as the law allows."

*Givago Growth, LLC v. Itech AG, LLC*, 300 Va. 260, 265 (2021) (quoting *Penick v. Ratcliffe*, 149 Va. 618, 627-28 (1927)). "The purpose underlying the absolute privilege is that 'the public interest is best served when individuals who participate in lawsuits are allowed to conduct the proceeding with freedom to speak fully on the issues relating to the controversy.'" *Id.* (quoting *Watt v. McKelvie*, 219 Va. 645, 651 (1978)).[7]

---

[7] As mentioned, absolute privilege goes "beyond the actual courtroom" and is extended to proceedings that are judicial in nature because of the safeguards in place, such as liability for perjury or the applicability of the rules of evidence. *Lindeman*, 268 Va. at 537. For example, because a claimant seeking to perfect a mechanic's lien must appear in the clerk's office "and make oath before a notary public," the "filing of the memorandum of mechanic's lien constitutes a judicial proceeding," and statements within the memorandum are "absolutely privileged" if they are "relevant and pertinent to the case." *Donohoe Constr. Co. v. Mt. Vernon Associates*, 235 Va. 531, 538-39 (1988). Similarly, "certain proceedings before" the Workers' Compensation Commission "involve a quasi-judicial body contemplated by the privilege because the Commission, upon receipt of evidence submitted under penalty of perjury, resolves facts and legal disputes falling within its statutory authority between parties who seek to have their disputes . . . resolved." *Lindeman*, 268 Va. at 537-38.

In the case at hand, Captain Paul's description of the BOI hearing provides overwhelming and uncontested evidence that Fraser's statements made during the May 15, 2020 BOI hearing are absolutely privileged. BOI hearings are conducted before a panel of unbiased higher-ranking officers, who consider sworn witness testimony and other evidence and can be questioned through voir dire at the hearing. The hearings are open to the public and subject to FOIA requests. The record indicates that Rolofson participated at the hearing and had the assistance of counsel. Further, Rolofson was ordered to appear in front of this BOI to determine whether the allegations were substantiated and whether the Board should recommend his separation from the Army. Thus, Fraser's allegedly defamatory statements were made "before a tribunal or officer clothed with judicial or quasi-judicial powers." *Givago Growth*, 300 Va. at 265. In that context, the public interest is best served by permitting witnesses to "speak fully," under penalty of perjury, so that the BOI can resolve the dispute before it. *Id.* Accordingly, the undisputed evidence demonstrated that Fraser's statements at the BOI hearing were absolutely privileged. Therefore, although for a different reason, we affirm the circuit court's judgment dismissing Rolfson's defamation claims that were based on those statements.

II. *The circuit court's decision to dismiss Rolofson's defamation claim as to the April 29 2021 statement due to its being an expression of opinion*[8]

Rolofson also challenges the circuit court's finding that the April 29, 2021 statement was an expression of opinion.[9] In Virginia, to successfully plead a defamation claim, the plaintiff must allege facts to establish (1) publication of, (2) an actionable statement, (3) with requisite intent. *Schaecher v. Bouffault*, 290 Va. 83, 90 (2015). Notably, "expressions of opinion are not

---

[8] Whether Fraser's statement about her then frame of mind is defamatory on its face was not addressed by either party and so this Court does not include it in its analysis.

[9] This presents the Court with a question of law that it analyzes de novo. *Cashion v. Smith*, 286 Va. 327, 336 (2013).

actionable as defamation." *Lewis v. Kei*, 281 Va. 715, 727 (2011). An idea expressed in opinion is never "false" within the scope of the First Amendment of the United States Constitution, and "however pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974). "[W]hen a statement is relative in nature and depends largely on a speaker's point of view, that statement is an expression of opinion." *Hyland v. Raytheon Tech. Sers. Co.*, 277 Va. 40, 47 (2009).

In the case at hand, the record demonstrates that the April 29, 2021 statement by Fraser was an opinion. Rolofson alleges that Fraser "stated she was in fear of her life because [Rolofson] knew her address and had sued her," even though Rolofson had "not contact[ed] her for a number of years." Clearly, the conclusion by Fraser that she was in "fear of her life" was relative to the nature of her own personal knowledge: She formed this opinion based on her knowledge that he had sued her and knew where she lived. Accordingly, her statement of her then state of mind ("fear of her life") largely depended on her subjective point of view and therefore is an expression of opinion. Indeed, Rolofson's counter-assertion in the second part of that paragraph, intimating that she should not be in fear of her life, is likewise an opinion largely dependent on his own subjective viewpoint: He formed this opinion based on his knowledge that he had not contacted her in years. Accordingly, we find as a matter of law that the statement made by Fraser on April 29, 2021, is an expression of opinion. Therefore, the circuit court did not err when it dismissed Rolofson's defamation claim for this statement.

### III. *The circuit court's denial of leave to amend*

Rolofson also argues that the circuit court abused its discretion by dismissing his defamation claim without granting him leave to amend. Review of a circuit court's "decision to grant or deny a motion" for leave to file an amended complaint "is limited to the question

whether the trial court abused [its] discretion." *AGCS Marine Ins. Co. v. Arlington Cnty.*, 293 Va. 469, 487 (2017) (quoting *Lucas v. Woody*, 287 Va. 354, 363 (2014)). Although a pleading may not be amended "after it is filed save by leave of court," Rule 1:8 provides that "[l]eave to amend shall be liberally granted in furtherance of the ends of justice." Generally, a circuit court need not grant leave to amend when the proffered amendments "are legally futile," or "where there is no proffer or description of the new allegations." *AGCS*, 293 Va. at 487 (citing Rule 1:8). Other relevant considerations include "whether the court previously granted leave to amend" and "how long the case has been pending." *Doe By and Through Doe v. Baker*, 299 Va. 628, 656 (2021) (citing *Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 67 (2007)).

Here, the record demonstrates that the circuit court previously granted Rolofson leave to file an amended complaint. Moreover, when Rolofson objected to the circuit court's order dismissing count three of his amended complaint, he did not proffer any new allegations he would include in a second amended complaint that would overcome the circuit court's finding that the statement was an opinion from which a defamation claim could not arise. Rather, he merely stated, "as to the statement not being clearly pled, [he] should have been provided an opportunity to replead to clarify." Given those circumstances, the circuit court did not abuse its discretion by not granting Rolofson leave to amend.

IV. *The circuit court's ruling regarding Virginia's anti-SLAPP Statute*

Fraser argues that, although the circuit court ruled in her favor, it erred by not applying the immunity provided under Virginia's Anti-SLAPP statute, Code § 8.01-223.2(A). She asserts that the circuit court erred in holding that the statements at issue in the case did not regard "matters of public concern that would be protected under the First Amendment to the

Constitution of the United States" within the meaning of Code § 8.01-223.2(A)(i).[10] She likewise argues that the circuit court erred in holding that the BOI hearing was not a "public hearing before the governing body of any locality or other political subdivision or a public hearing before the board, commission, agency or authority of any such governing body or political subdivision or any other governing body of local government" under Code § 8.01-223.2(A)(ii).[11] Fraser argues that the proper test for determining whether a matter is of public concern is whether its content implicates the public welfare. She contends that the standards of conduct for the military services are such a matter. She also reiterates that the BOI hearing related to Rolofson's fitness to retain his "position of trust to protect the Constitution, the United States and its citizens," which Fraser sees as "a matter of public concern."

"Under well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo." *Dep't of Taxation v. R.J. Reynolds Tobacco*, 300 Va. 446, 454 (2022) (quoting *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 383 (2016)); *Wintergreen Homestead, LLC v. Pennington*, 76 Va. App. 69, 74 (2022). "The 'primary objective of statutory construction is to ascertain and give effect to legislative intent.'" *Grethen v. Robinson*, 294 Va. 392, 397 (2017) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)); *Chenevert v. Commonwealth*, 72 Va. App. 47, 56 (2020). "That intention is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not

---

[10] Fraser argues that she was entitled to immunity under the statute because the challenged statements related to Rolofson's misconduct and fitness to serve as an active duty servicemember. Viewed in that light, Fraser contends that the statements addressed a matter of public concern under Code § 8.01-223.2(A)(i).

[11] Fraser contends the BOI was a public hearing before a board or political subdivision, namely, the United States Army, which she argues makes her statements at that hearing protected under Code § 8.01-223.2(A)(ii).

rely on rules of statutory construction." *Palmer v. Atlantic Coast Pipeline*, 293 Va. 573, 578 (2017) (quoting *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91 (1997)).

"[W]hen the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning." *Conner v. City of Danville*, 70 Va. App. 192, 205 (2019) (quoting *Newberry Station Homeowners Ass'n, Inc. v. Bd. of Supervisors of Fairfax County*, 285 Va. 604, 614 (2013)). "[T]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." *Grethen*, 294 Va. at 397 (quoting *Turner*, 226 Va. at 459).

Settled principles of statutory construction also dictate that statutes "in derogation of the common law are [themselves] to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." *Shoemaker v. Funkhouser*, 299 Va. 471, 484 (2021) (alteration in original) (quoting *Wetlands Am. Tr., Inc. v. White Cloud Nine Ventures, L.P.*, 291 Va. 153, 165 (2016)); *Isbell v. Commercial Inv. Assocs.*, 273 Va. 605, 613 (2007) (quoting *Chesapeake & Ohio Ry. Co. v. Kinzer*, 206 Va. 175, 181 (1965)). "[O]ur duty [is] to interpret the statute as written and when this is done our responsibility ceases." *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 277 (2016)).

A. *SLAPP suits and anti-SLAPP statutes*

"The acronym 'SLAPP' . . . was coined in the 1980s to refer to 'meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so.'" *Bristol Asphalt Co., v. Rochester Bituminous Prods., Inc.*, 227 N.E.3d 1019, 1031 (Mass. 2024) (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 939 n.7 (Mass. 1998)).

"Generally speaking, anti-SLAPP statutes aim to weed out and deter lawsuits brought for the improper purpose of harassing individuals who are exercising their protected right to freedom of speech." *Fairfax v. CBS Corp.*, 2 F.4th 286, 296 (4th Cir. 2021). Virginia is one of many states that have adopted an anti-SLAPP statute.

As relevant to Fraser's appeal, Virginia's anti-SLAPP statute[12] provided as follows:

> A. A person shall be immune from civil liability for a violation of § 18.2-499, a claim of tortious interference with an existing contract or a business or contractual expectancy, or a claim of defamation based solely on statements (i) regarding matters of *public concern* that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party or (ii) made at a public hearing before the governing body of *any locality or other political subdivision*, or the boards, commissions, agencies and authorities thereof, and other governing bodies of any local governmental entity concerning matters properly before such body. The immunity provided by this section shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false.

> B. Any person who has a suit against him dismissed or a witness subpoena or subpoena duces tecum quashed pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs.

Code § 8.01-223.2; 2020 Va. Acts ch. 824 (emphases added). At issue in the appeal are both Code § 8.01-223.2(A)(i) and (A)(ii). With this framework in mind, we address each provision in turn.

---

[12] Code § 8.01-223.2 was amended effective July 1, 2020, so arguably the earlier version might apply because the challenged statements were made on May 15, 2020. But the only difference between the statutory language following the 2020 amendment was an expansion of the availability of attorney fees for a quashed witness subpoena or subpoena duces tecum, which is not at issue here. The statute was amended again effective July 1, 2023, after the trial court had ruled. *See* 2023 Va. Acts chs. 462, 463.

- 13 -

B. *Matters of Public Concern*

Code § 8.01-223.2 does not define "matters of public concern"; instead, it tethers the statutory immunity provided to statements protected by the First Amendment. "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964)); *Connick v. Myers*, 461 U.S. 138, 145 (1983) (same). "Courts begin the First Amendment inquiry by assessing whether the speech at issue relates to a matter of public concern." *Liverman v. City of Petersburg*, 844 F.3d 400, 406 (4th Cir. 2016). "The inquiry into the protected status of speech is one of law, not fact." *Connick*, 461 U.S. at 148 n.7.

"Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Carey v. Throwe*, 957 F.3d 468, 475 (4th Cir. 2020) (quoting *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (en banc)); *Campbell v. Galloway*, 483 F.3d 258, 267 (4th Cir. 2007) (same). "By contrast, if the speech at issue merely implicates a 'purely personal' topic, the First Amendment does not apply and our analysis comes to an end." *Carey*, 957 F.3d at 475 (quoting *Liverman*, 844 F.3d at 406). "[M]any ordinary disputes in the public workplace should be settled or resolved without calling the heavy artillery of the Constitution into play." *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012).

"[F]or speech to rise to the level of public concern, it generally must involve at least some objective nexus to the public welfare, beyond the simple fact that its subject happens to be a public employee." *Carey*, 957 F.3d at 478. So, the question before the Court is "whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest." *Brooks*, 685 F.3d at 371 (quoting *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998)); *Cromer v. Brown*, 88 F.3d 1315, 1325 (4th Cir. 1996) (same). That question is resolved "by examining the 'content, form and context' of his speech." *Cromer*, 88

- 14 -

F.3d at 1325 (quoting *Connick*, 461 U.S. at 147-48); *Urofsky*, 216 F.3d at 406. This inquiry is "case- and fact-specific." *Campbell*, 483 F.3d at 269 (quoting *Connick*, 461 U.S. at 147-48).

Speech generally is about "a public matter" when the content addresses such topics as:

- "discriminatory institutional policies or practices," *Brooks*, 685 F.3d at 372;

- "the operations and policies of the Department," *Liverman*, 844 F.3d at 408;

- "the inability of the [organization] to carry out its vital public mission effectively," *Cromer*, 88 F.3d at 1325-26;

- "improper treatment of members of the public" and discriminatory treatment of female officers, *Campbell*, 483 F.3d at 270;

- a new policy under consideration by a school board, *Loudoun Cnty. School Board v. Cross*, No. 210584, 2021 Va. LEXIS 141 (Aug. 30, 2021) (order); or

- a high school football coach's recruiting practices and behavior around student athletes, *Harless v. Nicely*, 80 Va. App. 678 (2024).

Conversely, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of *personal interest* do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Campbell*, 483 F.3d at 267 (emphasis added) (quoting *Stroman v. Colleton County Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992)). Moreover, "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id.* at 266 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).

Turning to the form and context of the speech, various courts have held that speech addressed a matter of public concern when it was:

- designed "to reach as broad a public audience as possible," *Snyder*, 562 U.S. at 454;

- 15 -

- directed to the public, *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011); *Liverman*, 844 F.3d at 410 (noting that Facebook posts suggest an intent to communicate with the public); or

- in the form "of a group complaint," *Cromer*, 88 F.3d at 1325-26.

The forum in which the speech occurred is also important. *Massaro v. Fairfax County*, 95 F.4th 895, 906 (4th Cir. 2024). Typically, invoking "an internal grievance procedure" does "not seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Id.*; *Brooks*, 685 F.3d at 373 (stating "[a]n employee . . . who seeks primarily resolution of his personal situation through an employer-provided grievance process simply does not speak with the civic intent necessary to invoke the First Amendment").

Applying the above framework to the facts of this case, we conclude that the circuit court correctly held that Fraser's statements at the BOI did not address a "'matter of public concern that would be protected under the First Amendment to the United States Constitution,' and as such, do not receive the protection of Virginia Code § 8.01-223.2(A)(i)." Fraser's statements "through 'an internal grievance procedure'" indicated that she did "not seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Brooks*, 685 F.3d at 373 (quoting *Borough of Duryea*, 564 U.S. at 398).

Fraser resists this conclusion by asserting that the BOI was convened to consider Rolofson's "alleged misconduct, substandard performance of duty, or conduct" that was "incompatible with military service." Fraser insists that "whether the Army adheres to" its standards for officer conduct, including the mismanagement of personal affairs and conduct unbecoming an officer" is a matter of public interest. Perhaps that is true, but Fraser's challenged statements did not address whether the Army adheres to its standards for officer conduct—either as a systemic issue or in Rolofson's case. Rather, Fraser's statements concerned her personal allegations against Rolofson concerning his personal conduct. Nothing in the record

- 16 -

indicates that Fraser was attempting to speak with the public or that her statements addressed the Army's ability—as an organization—to meet its public mission. Fraser's reliance on *Ellis v. Shirikawa*, 2021 WL 5112829 (D. Me. 2021), and *Hammond v. Lovings*, 2016 U.S. Dist. LEXIS 187597 (W.D. Tex. May 25, 2016), is misplaced because those cases applied state anti-SLAPP statutes that are much broader than Virginia's.

"We do not diminish the significance of personal grievances to the parties involved" and acknowledge that the Army reprimanded Rolofson, *consistent with* its procedures and process; "but private concerns are just that: significant chiefly to the parties involved. The First Amendment demands more." *Brooks*, 685 F.3d at 376. Finally, although Fraser argues strenuously that she was entitled to immunity because the purpose of anti-SLAPP statutes is to protect citizens from "frivolous" and vexatious litigation, the circuit court did not find Rolofson's claims frivolous, and the face of the pleadings indicate that he genuinely was seeking personal redress to try to salvage his military career.

C. *The United States Army does not qualify as the "governing body of any locality or political subdivision"*

"Adhering closely to statutory texts, Virginia courts presume that the legislature chose, with care, the words it used when it enacted the relevant statute." *Cornell*, 301 Va. at 349 (quoting *Tvardek*, 291 Va. at 277). "The act of choosing carefully some words necessarily implies others are omitted with equal care." *In re Brown*, 295 Va. 202, 223 (2018) (quoting *Rickman v. Commonwealth*, 294 Va. 531, 540 n.3 (2017)). "The one canon of construction that precedes all others is that we presume that the legislature says what it means and means what it says." *Cornell*, 301 Va. at 349 (quoting *Tvardek*, 291 Va. at 277).

The circuit court ruled that the BOI hearing was not "'a public hearing before the governing body of any locality or other political subdivision' or a public hearing before the

board, commission, agency or authority of any such governing body or political subdivision or any other governing body of local government," and thus "not the type of public hearing contemplated" by Code § 8.01-223.2(A)(ii). That ruling follows the statutory language.

Code § 8.01-223.2(A)(ii) protects statements "made at a public hearing before the governing body of *any locality* or other political subdivision, or the boards, commissions, agencies and authorities thereof, and other governing bodies of any *local* governmental entity concerning matters properly before such body." (Emphases added).

Fraser's argument focusing on what comprises a "public hearing" elides the significant limitation within Code § 8.01-223.2(A)(ii) on the reach of Virginia's anti-SLAPP statute. Although some states have defined governing bodies quite broadly, Virginia has not. The plain words of the statute limit its protections. We cannot ignore the limiting words "locality" and "local government" in the enactment and presume that the legislature meant something broader. *Cornell*, 301 Va. at 349.

Fraser argues that the 82nd Airborne Division is a political subdivision under Code § 8.01-223.2. Political subdivision, as defined in Code § 15.2-5101, means a locality or any institution or commission *of the Commonwealth of Virginia*. The Army is a service branch of the United States Armed Forces and is organized within the Department of the Army, a federal government agency. It would be a strain of logic to try and categorize the Army, a military branch, as a political subdivision as the legislature contemplated when drafting the anti-SLAPP statute. The emphasis throughout Code § 8.01-223.2 is on local entities and other governing bodies that have been given authority by the Commonwealth. Further, it appears that Code § 8.01-223.2 refers to counties, cities, towns, and governing bodies that are owned or controlled by the Commonwealth. For example, a county is a political subdivision of the state for the purpose of civil administration of such powers as may be delegated by the state. *Kirkpatrick v.*

*Bd. of Supervisors*, 146 Va. 113 (1926). Although the BOI was a board, which is referenced in

Code § 8.01-223.2, it is not a board of a locality or other political subdivision.[13]

Accordingly, the 82nd Airborne Division of the Army is clearly not a political

subdivision of the Commonwealth that would be included under Code § 8.01-223.2. Therefore,

the circuit court did not err in its ruling that Code § 8.01-223.2 did not apply in this case.

V. *Attorney Fees*

Finally, Fraser claims that because she was entitled to immunity under Code

§ 8.01-223.2(A), she was entitled to attorney fees under Code § 8.01-223.2(B). Fraser argues

that the circuit court erred when it denied the award of attorney fees and costs Code

§ 8.01-223.2(B) permits.

> Any person who has a suit against him dismissed or a witness
> subpoena or subpoena duces tecum quashed pursuant to the
> immunity provided by this section may be awarded reasonable
> attorney fees and costs.

Code § 8.01-223.2(B).

We deny Fraser's request for "reasonable attorney fees and costs" under subsection (B).

Under that provision of Virginia's anti-SLAPP statute, such fees and costs may be awarded only

to a "person who has a suit against him dismissed . . . *pursuant to the immunity provided by this*

*section.*" *Id.* (emphasis added). Therefore, not only is such an award discretionary but it is also

---

[13] At oral argument, counsel for Fraser argued that "board" stood alone in the disjunctive within Code § 8.01-223.2, and therefore, the application of the anti-SLAPP statute is broader than it appears. Counsel is mistaken. We conclude that the General Assembly's intent in drafting the statute was to qualify the word "board" by the preceding limiting language of "governing body of any local or other political subdivision" connected by the use of the noun "thereof" within that sentence. Collins Dictionary states that "thereof is used after a noun to relate that noun to a situation or thing that you have just mentioned." *Thereof*, *Collins English Dictionary*, https://www.collinsdictionary.com/dictionary/english/thereof (last visited Jul. 29, 2024).

inapplicable here where dismissal of the charges against Fraser is not based on affirmative evidence of Fraser's immunity under Code § 8.01-223.2(A).

CONCLUSION

Because we conclude that most of the alleged defamatory statements were made in a quasi-judicial proceeding, they were absolutely privileged. As a result, we need not, and do not, address whether the circuit court erred in either granting the plea in bar on qualified privilege grounds or in denying Rolofson an opportunity to present evidence of malice. Thus, we affirm the circuit court's decision to dismiss Rolofson's defamation action under the right result, different reason doctrine as to the May 15, 2020 statements. Further, we affirm the circuit court's decision to dismiss Rolofson's defamation claim as to the April 29, 2021 statement in that it was an expression of opinion. We also affirm the circuit court's denial of Rolofson's request for leave to amend the complaint. Additionally, we affirm the circuit court's ruling that Virginia's anti-SLAPP statute did not apply under the circumstances of this case and as a result, the circuit court also did not err in failing to award attorney fees and costs to Fraser.

*Affirmed.*